AMERICAN BUMPER AND MANUFACTURING COMPANY v
HARTFORD FIRE INSURANCE COMPANY

Docket Nos. 152655, 154355. Submitted March 8, 1994, at Grand
Rapids. Decided September 20, 1994, at 9:10 A.M. Leave to
appeal sought.

American Bumper and Manufacturing Company brought an ac-
tion in the Ionia Circuit Court against Hartford Fire Insurance
Company and several other liability insurers of the plaintiff,
seeking to be provided a defense against an investigation by the
Environmental Protection Agency into possible pollution relat-
ing to the plaintiffs' waste water discharge. Farm Bureau
Mutual Insurance Company of Michigan agreed to tender a
defense, but reserved its rights. CIGNA Fire Underwriters
Insurance Company offered to share the defense costs equally
with the other insurers. After the plaintiff agreed to take
remedial measures, the EPA took no further action, concluding
that no contamination warranting a full-scale cleanup had
occurred. The court, Charles W. Simon, Jr., J., granted sum-
mary disposition for Farm Bureau, CIGNA, and Pacific Employ-
ers Insurance Company, ruling that the pollution-exclusion
clauses of those insurers' policies barred the plaintiff's claim.
The court also granted summary disposition for Employers
Mutual Casualty Company, Providence Washington Insurance
Company, Hartford Fire, CIGNA, and Pacific Employers, ruling
that there had been no occurrence that gave rise to a duty to
defend under the terms of the policies. The plaintiff appealed
the orders of summary disposition, and the appeals were consol-
idated.

The Court of Appeals held:

1. The pollution-exclusion clauses of the Farm Bureau,
CIGNA, and Pacific Employers policies exclude coverage for

REFERENCES

Am Jur 2d, Insurance §§ 1405, 1408.

Consequences of liability insurer's refusal to assume defense of
action against insured upon ground that claim upon which action
is based is not within coverage of policy. 49 ALR2d 694.

Construction and application of pollution exclusion clause in liabil-
ity insurance policy. 39 ALR4th 1047.

damages arising out of the nonaccidental discharge of waste materials and therefore bar the plaintiff's claim in the event that the waste water discharge was not sudden and accidental.

2. An insurer's duty to defend its insured extends even to nonmeritorious claims where those claims allege theories of recovery that fall within the policy. The insurer owes the duty to defend until such time as the insurer has confined the claims against the insured to those theories that the policy would not cover. In this case, the insurers owed a duty to defend the plaintiff until they could establish that no sudden and accidental discharge of a pollutant had occurred. Because the insurers did not clearly establish that no such discharge had occurred, the trial court erred in granting summary disposition for Employers Mutual, Providence Washington, Hartford Fire, CIGNA, and Pacific Employers on the ground that no occurrence giving rise to a duty to defend under the policies had taken place.

3. The trial court erred in granting summary disposition for CIGNA and Pacific Employers on the basis of the loss-in-progress doctrine, i.e., on the basis that the supposed contamination began before the effective dates of coverage under those insurers' policies. The loss-in-progress doctrine has not been adopted in Michigan, and whether the doctrine should be adopted need not be decided in this case, given the analysis of the issue of the insurers' duty to defend the plaintiff.

4. The extent of Farm Bureau's and CIGNA's obligation to the plaintiff in light of Farm Bureau's tender of a defense and CIGNA's agreement to share in the defense costs must be resolved after the trial court has determined which, if any, of the insurers had a duty to defend the plaintiff.

Reversed and remanded.

INSURANCE — LIABILITY INSURERS — DUTY TO DEFEND.

An insured's duty to defend differs from the duty to provide coverage, and extends even to nonmeritorious claims where those claims allege theories of recovery that fall within the policy; the insurer owes the duty to defend until such time as the insurer has confined the claims against the insured to those theories that the policy would not cover; any doubt regarding whether an allegation comes within the scope of the policy must be resolved in the insured's favor.

*Miller, Johnson, Snell & Cummiskey* (by *J. Michael Smith* and *Karen J. Custer*), for American Bumper and Manufacturing Company.

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Gregory G. Timmer*), for Hartford Fire Insurance Company.

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Curtis R. Hadley*), for Farm Bureau Mutual Insurance Company of Michigan.

*O'Melveny & Myers* (by *Paul R. Koepff*), and *Harvey, Kruse, Westen & Milan, P.C.* (by *Gary L. Stec*), for CIGNA Fire Underwriters Insurance Company and Pacific Employers Insurance Company.

*Provizer, Lichtenstein & Phillips, P.C.* (by *Deborah Molitz*), for Providence Washington Insurance Company.

*Cholette, Perkins & Buchanan* (by *Robert J. Riley*), for Employers Mutual Casualty Company.

Amici Curiae:

*Smith & Brooker, P.C.* (by *Glenn F. Doyle*), and *Grippo & Elden* (by *Charles S. Bergen* and *Patrick T. Nash*), for Fireman's Fund Insurance Company.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Stephen M. Kelly* and *Elizabeth A. Downey*), and (*Wiley, Rein & Fielding* by *Thomas W. Brunner, Marilyn E. Kerst,* and *Steven B. Long,* of Counsel), for Insurance Environmental Litigation Association.

*Boyden, Waddell & Timmons* (by *Dennis A. Chamberlain*), for Plaisted and Companies.

Before: SAWYER, P.J., and FITZGERALD and D. A.
ROBERSON,* JJ.

PER CURIAM. Plaintiff appeals from orders of the
circuit court granting summary disposition in fa-
vor of defendants on plaintiff's claims for coverage
under insurance policies issued by defendants. We
reverse and remand.

Plaintiff has for a number of years maintained
an operation involving the cleaning, brightening,
anodizing, and sealing of aluminum parts. As the
result of its manufacturing process, plaintiff dis-
charges a large quantity of waste water containing
various chemicals into a lagoon. The water in the
lagoon, at least until 1986, contained various
chemicals, including phosphoric acid, sulfuric acid,
nitric acid, nickel acetate, and various metals such
as aluminum, iron, and chromium. Beginning in
the 1970s, plaintiff came under the scrutiny of the
Department of Natural Resources, which was con-
cerned that certain chemicals in the lagoon were
in excess of water-quality standards. There was
apparently no action forthcoming by the DNR,
however. In the 1980s, at various times, the DNR
did request various testing and hydrogeological
studies to be performed. Also in the 1980s, specifi-
cally in 1984, plaintiff came under the scrutiny of
the Environmental Protection Agency, which was
investigating whether the site should be placed on
the National Priorities List. Plaintiff eventually
entered into a consent decree with the EPA,
whereby it agreed to perform a remedial investiga-
tion and a feasibility study. After those studies
were performed, as well as additional tests taken
at the EPA's request, the EPA began taking steps

---

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

toward a "no action" remedy. The DNR raised objections, requesting additional testing.

In response to the notice by the EPA in 1986, plaintiff requested its various insurers to defend it against the EPA's allegations. All of the insurers, except for Farm Bureau Mutual Insurance Company of Michigan and CIGNA Fire Underwriters Insurance Company, denied the request. Eventually, Farm Bureau agreed to tender a defense, subject to a reservation of its rights to withdraw the defense if it was determined there was no insurance coverage for plaintiff's claim. CIGNA offered to share equally with all other carriers the defense costs from the date of the EPA's letter until it could be determined that off-site damages did not occur. CIGNA did not, however, pay any of plaintiff's defense costs.

At issue, then, is the responsibility of defendants for the defense costs of plaintiff in response to the EPA actions. The trial court granted summary disposition in favor of defendants Farm Bureau, CIGNA, and Pacific Employers Insurance Company on various theories, which we shall consider in turn.

Plaintiff first argues that the trial court erred in granting summary disposition in favor of defendants Farm Bureau, CIGNA, and Pacific Employers under the pollution-exclusion clauses of the respective policies. We disagree. The standard pollution-exclusion clause provides for an exception to coverage for damages arising out of the discharge of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants. Although the CIGNA policy is worded somewhat differently, it too excludes coverage for the discharge of pollutants, which includes waste materials. The policies would provide coverage, however,

if the release of the pollutants was sudden and accidental.

At issue here is whether the discharge into the lagoon comes within the term "pollutants." Plaintiff claims there is a genuine issue of material fact whether these materials were, in fact, pollutants. However, because the definition of pollutants includes waste materials and we cannot see how any reasonable trier of fact could conclude that the materials in the lagoon were anything other than waste materials, it comes within the definition. Furthermore, although the language of the CIGNA policy is somewhat different, we are not persuaded that the differences are sufficient to change our conclusion. Accordingly, we reject plaintiff's argument that the pollution exclusions contained in these policies do not apply because the chemicals placed in the lagoon by plaintiff were not "pollutants." This, however, does not end the analysis.

We next turn to the question whether summary disposition was appropriate because there was no "occurrence" under the policies. Plaintiff argues that the trial court incorrectly granted summary disposition in favor of defendants Employers Mutual Casualty Company, Providence Washington Insurance Company, Hartford Fire Insurance Company, CIGNA, and Pacific Employers on the ground that there was no occurrence under those policies. This represents a more difficult analysis and, we believe, ultimately presents the controlling question in this type of case. Although the language in the various policies differs in some respects, all the policies essentially require that, in order for there to be coverage, an "occurrence" must happen, namely, something that is accidental and results in either bodily injury or property damage that is not expected or intended by the insured. What makes this case difficult is the fact

that ultimately there was no contamination, or at least not in sufficient amounts to warrant EPA action, by which we could examine the facts and determine the existence of an event that would trigger coverage under the policy. That is, had contamination been found, we would have learned the cause of that contamination and be able to determine whether that contamination was the result of an accident and was "sudden and accidental" within the meaning of the pollution-exclusion clauses. We could then with some confidence be able to conclude whether coverage was provided under the policies.

However, we are not called upon to determine whether there is coverage to clean up a pollution site, but whether there was a duty to defend against the EPA investigation into possible contamination, where that investigation resulted in the conclusion that there was no contamination. Initially, we do note that the Supreme Court recently decided that an EPA investigation is the equivalent of a lawsuit under an insurance policy and therefore can, under the appropriate facts, trigger a duty to defend even in the absence of actual litigation. *Michigan Millers Mutual Ins Co v Bronson Plating Co,* 445 Mich 558; 519 NW2d 864 (1994).[1]

An insurer's duty to defend differs from the duty to provide coverage. It extends even to nonmeritorious claims where those claims allege theories of recovery that fall within the policy. *Protective Nat'l Ins Co of Omaha v City of Woodhaven,* 438 Mich 154, 159; 476 NW2d 374 (1991). If there is

[1] We further note, however, that the Court limited its consideration to determining whether the EPA notification of the insured's possible liability for alleged environmental contamination constitutes a "suit" that gives rise to the duty to defend. The Court specifically did not consider any other issue concerning whether there was a duty to defend. *Id.* at 556, n 7.

any doubt regarding whether an allegation comes within the scope of the policy, that doubt must be resolved in the insured's favor. *Id.; Polkow v Citizens Ins Co of America,* 438 Mich 174, 180; 476 NW2d 382 (1991). Thus, the insurer owes the duty to defend until such time as the insurer has confined the claims against the insured to those theories that the policy would not cover. *Protective Nat'l, supra* at 159-160. In the context of pollution cases, this means that the insurer has a duty to defend until there is at least sufficient factual development to determine what caused the pollution so that a determination can be made regarding whether the discharge was sudden and accidental. *Polkow, supra* at 180. Until that point, the allegations must be regarded as coming arguably within the liability policy, thus resulting in a duty to defend. *Id.*

The difficulty in applying this analysis to the case at bar is that no pollution was ever found, at least not in sufficient quantities to merit a full-scale cleanup. That is, without such a discharge, the facts will never be developed to the point where it can be determined that the discharge was or was not sudden and accidental, thus triggering policy coverage. We could extend the reasoning in *Polkow* to the conclusion that a duty to defend is therefore owed to the point that it is determined that no pollution has occurred. On the other hand, there is no particular allegation that there has ever been the sudden and accidental discharge of anything, regardless of whether it is a pollutant. That is, there was not on plaintiff's property an accident that the EPA investigated to determine whether that accident resulted in contamination that plaintiff would be required to clean up.[2]

Thus, we find ourselves grappling with the horns

---

[2] If such an "accident" had in fact occurred, we could easily say

of a dilemma. Do we consider the discharge that never occurred to have been sudden and accidental had it occurred and therefore triggering coverage and a duty to defend? Or do we consider it as something other than sudden and accidental and, therefore, coming within the provisions of the pollution exclusion, not meeting the definition of an occurrence under the policy, and therefore not triggering coverage or a duty to defend?

In answering that question, we look to the Supreme Court's decision in *Polkow* for guidance. In *Polkow, supra* at 180-181, the Court opined as follows:

> The insurer's duty to provide a defense extends to allegations which even arguably come within the policy coverage. *Allstate Ins Co v Freeman,* 432 Mich 656; 443 NW2d 734 (1989). Fairness requires that there be a duty to defend at least until there is sufficient factual development to determine what caused the pollution so that a determination can be made regarding whether the discharge was sudden and accidental. Until that time, the allegations must be seen as "arguably" within the comprehensive liability policy, resulting in a duty to defend.
>
> The dissent concedes that "the duty to defend is broader than the duty to indemnify and is properly invoked when claims are even arguably within coverage." *Post,* p 185. In addition, the dissent, citing *Guerdon Industries, Inc v Fidelity & Casualty Co of New York,* 371 Mich 12; 123 NW2d 143 (1963), correctly states, "any doubt pertaining to application of the duty to defend is to be resolved in favor of the insured." *Post,* p 185. But without proof of the source of the discharge, the

that this constitutes an allegation of an event, a sudden and accidental discharge, which would come within the policy coverage if it resulted in pollution. That would then trigger the duty to defend, even though it might ultimately be determined that the accident did not cause contamination, or at least not in sufficient amounts to merit requiring the landowner to engage in an EPA-ordered cleanup.

court cannot determine whether the discharge falls within the pollution-exclusion clause or whether the unknown discharge falls within the sudden and accidental exception to the exclusion clause. This uncertainty creates doubt regarding coverage. Summary disposition was inappropriate.

Although not directly on point, a similar issue was involved in the recent case of *Auto-Owners Ins Co v City of Clare,* 446 Mich 1; 521 NW2d 480 (1994). The Court acknowledged that, under *Polkow,* a duty to defend is owed where there are uncertainties about the nature of the discharge. *Id.* at 15. However, the Court in *Auto-Owners* concluded that the facts of that case did not allow for the possibility of a sudden and accidental discharge and, therefore, summary disposition in favor of the plaintiff was appropriate. *Id.*

With these principles in mind, we conclude that, under the circumstances of this case, an "occurrence" sufficient to trigger the duty to defend under the policies may have happened. More specifically, a duty to defend was owed until such time as it could be established that no sudden and accidental discharge of a pollutant had occurred. Once that occurred, the insurance companies are, of course, free to cease their defense because they have now confined any allegations against the insured to issues outside the scope of the policy. It is, of course, irrelevant whether the insurance companies achieve this by establishing to the EPA's satisfaction that no discharge occurred at all, that there were no pollutants in the lagoon and, therefore, a pollution discharge could not have occurred, or that any discharge that did occur was not the result of a sudden and accidental discharge. The defense must be continued until that point is reached.

Thus, the question is not so much whether an

"occurrence" has occurred, but whether it has been established that an occurrence has not occurred. Until it is established that an occurrence has not occurred, a duty to defend is owed. Because it was not clearly established that an occurrence did not occur, the duty to defend existed until either the EPA investigation was complete and there was no need for further defense or until the carriers could affirmatively establish that no occurrence had occurred.

We recognize that there will remain questions concerning which of the several defendants in this case would owe a duty to defend. Because there are varying insurance policies at issue with varying coverages, we in no way suggest that all of the various defendants are necessarily liable to provide defense costs. However, those particular issues are not before us and must be resolved on remand.

Next, we turn to plaintiff's argument that the trial court erred in granting summary disposition in favor of defendants CIGNA and Pacific on the basis of the loss-in-progress doctrine. Under this doctrine, the defendants would not be liable if the loss began before coverage by the policies issued by the defendants. However, it does not appear that any Michigan court has adopted the loss-in-progress doctrine. We need not resolve the question whether the loss-in-progress doctrine should be recognized in Michigan, however, inasmuch as we believe that summary disposition would not be appropriate even were we to recognize that doctrine.

In this respect, we believe that the analysis is akin to that set forth above under the occurrence issue. That is, were this a coverage issue, and there was a demonstrable incident of pollution for which plaintiff was obligated to provide a remedy

and, therefore, there was an actual loss, we could look at the causation of that loss and determine when it occurred. Then, assuming it came within the coverage provisions of the applicable insurance policy or policies, we could determine which insurer or insurers were liable. However, in the absence of a discharge sufficient to have contaminated the surrounding area in quantities that would have warranted the EPA's ordering plaintiff to engage in a cleanup, we are left again with the problem of how to apply these principles to the duty to defend.

We believe, however, the answer here is the same as it was above: defendants owe a duty to defend until such time as they can contain the claims against their insured to an event that does not come within the coverage of the policy or to a time period that falls outside the policy. That is, each insurer is obligated to provide a defense until such time as it can establish conclusively that there could have been no sudden and accidental discharge of a pollutant occurring within the term of coverage provided by its policy. This could be accomplished by satisfying the EPA that no discharge ever occurred in sufficient quantities to merit EPA action (in which case the insurer has, in essence, provided a full defense), or showing that any such discharge had to have occurred either before the policy coverage began or after the policy had lapsed. In the case at bar, we are not satisfied that the defendant insurers have made a sufficient showing of that fact. Accordingly, summary disposition was inappropriate.

Finally, we turn to the question whether the trial court erred in dismissing plaintiff's complaint against defendants Farm Bureau and CIGNA inasmuch as they tendered a defense, albeit under a reservation of rights. We decline, however, to ad-

dress this issue because it is likely to have been rendered moot by our determination of the above issues. That is, there is a reasonable possibility, in light of our decision that summary disposition in favor of defendants on the issue of duty to defend was inappropriate, that one or more defendants will be found to have owed plaintiff a duty to defend. We believe the more prudent course is for the trial court to determine those issues before considering whether Farm Bureau and CIGNA have an obligation to plaintiff for having tendered a defense with a reservation of rights. Accordingly, we decline to resolve that issue, but we do so without prejudice to plaintiff. Plaintiff, and the various defendants for that matter, are free to reargue in the trial court or in a subsequent appeal the issue of Farm Bureau and CIGNA's obligations under the tendering of the defense with the reservation of rights, but only after the trial court has resolved the issue of which defendants, if any, owed plaintiff a duty to defend in light of this opinion.

For the above reasons, we conclude that the trial court erred in granting summary disposition in favor of defendants on the issue of the duty to defend. The issue must be resolved in light of the broader duty to defend as elaborated upon in this opinion.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs.