STOVER v GARFIELD

Docket No. 223196. Submitted June 12, 2001, at Detroit. Decided September 14, 2001, at 9:10 A.M. Leave to appeal sought.

William C. Stover, personal representative of the estate of Charles L. Dolan, deceased, brought an action in the Genesee Circuit Court against James Garfield, D.O., and others, alleging intentional misconduct in causing the decedent's death by improperly withholding food and water from the decedent while the decedent was under Dr. Garfield's care. The complaint also alleged gross negligence, false imprisonment, assault and battery, violations of various state and federal statutes, and ordinary negligence. Insurance Company of the West, which insured Dr. Garfield under a professional liability policy that covered "damages because of a professional incident to which this policy applies, which results from your rendering of, or your failure to render, professional services in the practice of your profession," initially defended the action, while reserving its right to withdraw if the court determined that the claims fell outside the policy's definition of professional services. The court, Robert M. Ransom, J., accepted the plaintiff's characterizations of the action as one not sounding in medical malpractice and entered an order accordingly. The insurer then announced that the claims did not implicate the insurance policy and declined to defend the case further. The plaintiff and the defendants then stipulated the entry of a judgment in favor of the plaintiff against Dr. Garfield only, to be satisfied solely through the proceeds of the insurance policy with Insurance Company of the West. The plaintiff brought a motion for garnishment against the insurer, which alleged that it had no obligations under the policy. The insurer alleged that professional negligence was synonymous with malpractice and that the plaintiff's characterization of the action as one not alleging medical malpractice absolved the insurer of obligations arising from Garfield's alleged professional negligence. The court found that the policy provided broader coverage than merely for medical malpractice and, therefore, the insurer erred in deciding to withdraw from its defense of Dr. Garfield. The court found the insurer was obligated to pay the full amount of the judgment. The insurer appealed.

The Court of Appeals *held*:

1. Pursuant to the definitions of the terms in the policy, there can be no "professional negligence" arising out of "professional services" or involving a "professional incident" that does not involve "malpractice." The concepts are synonymous. Because the trial court previously determined that the plaintiff's claims did not sound in malpractice, the professional liability policy at issue does not provide coverage for those claims.

2. The clear intent of the language of the policy is to provide coverage for what is commonly referred to as "malpractice" and only for malpractice (i.e., "professional liability"). Once the trial court determined that the plaintiff's claims did not involve malpractice, coverage under the policy no longer applied. The trial court erred in failing to hold that the insurer had no liability under the policy. The order of the trial court must be reversed and the matter must be remanded for the entry of a judgment in favor of the insurer.

Reversed and remanded.

O'CONNELL, J., dissenting, stated that the clear and unambiguous language of the insurance policy provides coverage for damages arising from the plaintiff's claims, that the trial court erred in concluding that the plaintiff's claims did not allege medical malpractice, that the plaintiff attempted to evade the medical malpractice action procedural requirements by couching the cause of action in terms of ordinary negligence and intentional misconduct, and that the insurer breached its duty to defend because the theories of recovery set forth by the plaintiff clearly fell within the coverage of the policy. The clear language of the policy provides coverage in this matter, and the actions of Dr. Garfield fall squarely within the purview of "professional services" and a "professional incident" as defined in the policy. The policy was not intended to limit coverage to damages arising solely from actions that fall within the precise definition of "malpractice." The order of the trial court finding the insurer liable for the amount of the settlement should be affirmed.

*Max Dean*, for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Insurance Company of the West.

Before: SAWYER, P.J., and GRIFFIN and O'CONNELL, JJ.

SAWYER, P.J. Garnishee-defendant Insurance Company of the West appeals from an order of the circuit

court rejecting garnishee-defendant's motion for summary disposition and requiring garnishee-defendant to cover defendant Dr. James Garfield's obligations under a prior consent judgment with plaintiff William C. Stover, personal representative of the estate of Charles L. Dolan, deceased. We reverse and remand.

The decedent was admitted to Fenton Extended Care Center in March 1994, in an advanced state of illness and age that rendered him incompetent. Defendant Dr. Garfield attended to the decedent at the facility until the decedent's death on April 22, 1994. According to the evidence, Dr. Garfield ordered discontinuation of oral and tube feeding and hydration of the decedent and of treatment for the decedent's pneumonia, several days before the latter's death, relying on instructions from the decedent's wife and her personal representative, neither of whom was legal guardian for the decedent. The nursing home had initiated procedures for acquiring the decedent's living will from the decedent's family physician but was lackluster in following up on its request. Dr. Garfield testified during his deposition that he knew of no living will associated with the decedent and had not asked about the existence of either a living will or a legal guardian.

The decedent's living will included a section for indicating treatments that the declarant wished not to be provided once death was unquestionably near. The form specifically listed the following examples: cardiac resuscitation, mechanical respiration, and artificial feeding and fluids by tubes. The decedent specified that only mechanical respiration was to be withheld. The document thus strongly implied that the decedent did not consent to the withholding of artifi-

cial feeding or fluids by tubes, as was done in his case.

Plaintiff William Stover commenced action on behalf of the decedent's survivors and estate, alleging that defendants improperly withheld food and water from the decedent, in violation of the latter's written directives. Plaintiff openly took pains to avoid characterizing the action as one sounding in medical malpractice, expressly wishing to avoid the requirement of filing an affidavit of merit from a medical practitioner, as required in such actions by MCL 600.2912d. The trial court accepted plaintiff's characterizations and excused that requirement.[1] Count I of the amended complaint alleged intentional misconduct in causing the decedent's death. Count II alleged gross negligence, false imprisonment, assault and battery, and violations of various state and federal statutes. Count III alleged ordinary negligence.

Dr. Garfield had an insurance policy with garnishee-defendant. The policy promised to indemnify and defend Dr. Garfield in matters arising from claims against him in connection with his provision of medical services. The policy additionally capped garnishee-defendant's responsibility for Dr. Garfield's damages at $200,000, and excluded from coverage intentional misconduct and exemplary damages.

Garnishee-defendant initially took responsibility for the defense of this action, while reserving its right to withdraw in the event that a court determined that the claims at issue fell outside the policy's definition of professional services. Then, in response to the trial

_____

[1] The propriety of allowing this case to go forward as something other than a medical malpractice action in the first instance is not an issue on appeal, and so we do not reach it, and express no opinion in the matter.

court's order stating that this was not a medical malpractice case, garnishee-defendant announced that the claims did not implicate the insurance policy and declined to defend the suit further.

Plaintiff and defendants then stipulated the entry of judgment in favor of plaintiff, against Dr. Garfield only, in the amount of $200,000, with interest and costs, to be satisfied solely through the proceeds of the insurance policy with garnishee-defendant. The trial court entered the consent judgment on August 24, 1998.

Plaintiff followed with a motion for garnishment. Garnishee-defendant resisted on the ground that garnishee-defendant had no obligations under the insurance policy, arguing that "professional negligence" was synonymous with "malpractice," and that plaintiff's emphatic characterization of the underlying action as something other than one alleging malpractice thus absolved garnishee-defendant of obligations pursuant to professional negligence. Alternatively, garnishee-defendant argued that, to the extent that coverage existed, damages—and thus garnishee-defendant's responsibility for them—should be apportioned according to whether they stemmed from covered or noncovered claims.

The trial court ruled that the insurance contract provided broader coverage than merely for medical malpractice and, therefore, garnishee-defendant erred in deciding to withdraw from its defense of Dr. Garfield. The court additionally held that the amount of the settlement was supportable by any of plaintiff's three theories of recovery, thus obligating garnishee-defendant for the full amount of the judgment with-

out need to allocate garnishee-defendant's obligations according to covered and noncovered claims.

Garnishee-defendant argues that the trial court erred in finding the insurance policy applicable to the claims against Dr. Garfield by its general terms and, alternatively, that if the policy did cover the matter generally, the court nonetheless failed to give effect to specific exclusions within it. This Court reviews contract language for ambiguity, and construes clear contract language, de novo. *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 563; 596 NW2d 915 (1999) (ambiguity); *Pakideh v Franklin Commercial Mortgage Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995) (clear contract language).

Ambiguities in insurance contracts must be strictly construed against the drafter. *State Farm Mut Automobile Ins Co v Enterprise Leasing Co*, 452 Mich 25, 38; 549 NW2d 345 (1996). "[U]nder the rule of reasonable expectation, the court grants coverage under the policy if 'the policyholder, upon reading the contract language is led to a reasonable expectation of coverage.'" *Fire Ins Exchange v Diehl*, 450 Mich 678, 687; 545 NW2d 602 (1996), quoting *Powers v DAIIE*, 427 Mich 602, 632; 398 NW2d 411 (1986).

In this case, the insurance policy at issue announces that garnishee-defendant's obligations under the contract extend to covering "*damages* because of a *professional incident* to which this *policy* applies, which results from *your* rendering of, or *your* failure to render, *professional services* in the practice of *your* profession . . . ." (Emphasis in original.) "Professional services" is defined within the contract:

> *Professional services* means the delivery of medical services by the individual Named Insured to a patient as permitted by license as a Medical Doctor or Doctor of Osteopathy. *Professional services* also includes the activities of the individual Named Insured: (i) as a supervisor of the activities of another person who renders medical services to a patient while acting under the direction and control of the individual Named Insured, if the individual Named Insured is legally responsible for the acts and omissions of the other person . . . . [Emphasis in original.]

"Professional incident" is defined as "an act or omission . . . in the furnishing of *professional services* by the individual Named Insured . . . to a patient, that may result in *your* liability for *damages*." (Emphasis in original.)

The question thus becomes whether there can be "professional negligence" arising out of "professional services" or involving a "professional incident" that does not involve "malpractice." For the reasons expressed below, we hold that such concepts are synonymous and, therefore, because it was previously determined that plaintiff's claims did not sound in malpractice, the professional liability policy at issue does not provide coverage for those claims.

We begin by looking at the definition of "malpractice":

> Professional misconduct or unreasonable lack of skill. This term is usually applied to such conduct by doctors, lawyers, and accountants. Failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services or to those entitled to rely upon them. It is any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil

practice, or illegal or immoral conduct. [Black's Law Dictionary (5th ed), p 864.]

Also of interest to the determination of this case is the Supreme Court's observation in *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 45-46; 594 NW2d 455 (1999):

> In *Bronson v Sisters of Mercy Health Corp*, 175 Mich App 647; 438 NW2d 276 (1989), the plaintiff's complaint included allegations that the defendant hospital had failed to supervise and adequately maintain its staff. The plaintiff argued that the trial court erred in granting summary disposition for failure to file the claim within the two-year period of limitation applicable to medical malpractice claims, because the complaint stated a claim for ordinary negligence only, which is governed by a three-year period of limitation. The Court of Appeals affirmed the trial court's order of summary disposition, agreeing with the trial court that the allegations within the plaintiff's complaint involve issues of medical judgment.
>
> "The key to a medical malpractice claim is whether it is alleged that the negligence occurred within the course of a professional relationship. The providing of professional medical care and treatment by a hospital includes supervision of staff physicians and decisions regarding selection and retention of medical staff. [175 Mich App 652-653 (citations omitted).]"
>
> The determination whether a claim will be held to the standards of proof and procedural requirements of a medical malpractice claim as opposed to an ordinary negligence claim depends on whether the facts allegedly raise issues that are within the common knowledge and experience of the jury or, alternatively, raise questions involving medical judgment. *Wilson v Stilwill*, 411 Mich 587, 611; 309 NW2d 898 (1981); *McLeod v Plymouth Court Nursing Home* [957 F Supp 113, 115 (ED Mich, 1997)].

In other words, if a claim arises out of "professional judgment" or a "professional relationship," then it

involves malpractice, not ordinary negligence. Similarly, the "professional liability" policy at issue here refers to coverage involving "professional services." We are satisfied that the clear intent of the language of the policy is to provide coverage for what is commonly referred to as "malpractice" and only for malpractice (i.e., "professional liability").

Therefore, once it was determined that plaintiff's claims in the case at bar did not involve "malpractice," and thus did not have to comply with the statutory requirements imposed on medical malpractice claims, coverage under the policy at issue here no longer applied.[2] Accordingly, the trial court erred in failing to hold that garnishee-defendant had no liability under the policy.[3]

---

[2] It is beyond dispute that plaintiff's claims do not sound in malpractice. First, in ruling on the motion for summary disposition, the trial court acknowledged that there was no malpractice claim:

Since there is no medical malpractice claim alleged, the plaintiff has no obligation under [MCL 600.2912d] to file an affidavit of merit. Section one of that statute provides that the plaintiffs—or, correction, the first sentence of that section says that the: "plaintiff in an action alleging medical malpractice" that does not fit the case at bar, because plaintiff does not allege medical malpractice. And it is in a medical malpractice claim that an affidavit of merit, by a health professional, is required.

Second, in his brief on appeal, plaintiff continues to disavow that this is a malpractice claim:

Because the Michigan Medical Malpractice Statutes, and all of its Tort-reform appendages, scrupulously reserves to the medical profession the protection that its members may not be held liable under it without the opinion testimony of a peer that a departure from acceptable practice had occurred, Plaintiff's Complaint avoided reliance on the Medical Malpractice Statute.

[3] As for the arguments raised by the dissent, our dissenting colleague argues that the complaint, despite plaintiff's adamant denials, sounds in medical malpractice. The dissent suggests that we should not rely on plaintiff's representations to determine if the claim sounds in malpractice.

In light of our resolution of the above issue, we need not address the remaining issues raised by garnishee-defendant.

Reversed and remanded to the trial court with instructions to enter judgment in favor of garnishee-defendant. We do not retain jurisdiction. Garnishee-defendant may tax costs.

GRIFFIN, J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. I strongly disagree with the majority's conclusion that garnishee-defendant Insurance Company of the West is not obligated to indemnify defendant James Garfield, D.O., (hereafter defendant) pursuant to the professional liability insurance policy. The present case provides a clear example of an insurer that wrongfully breached the duty to defend its insured and is seeking to avoid its concomitant duty to indemnify. Because the clear and unambiguous language of the insurance policy provides coverage for damages arising from plaintiff's claims, I would affirm the trial court's entry of judgment in favor of plaintiff.[1]

---

We see no justification in rejecting a party's unequivocal representation in order to find a basis to allow the party to win. This is particularly true where, as here, the party's representation was necessary to avoid summary disposition in the first place.

With regard to whether garnishee-defendant breached its duty to defend, the dissent correctly observes that there is a duty to defend a suit if the claims arguably fall within the policy coverage. *Radenbaugh v Farm Bureau General Ins Co of Michigan*, 240 Mich App 134, 137; 610 NW2d 272 (2000). However, garnishee-defendant did just that: it defended up to the point where the trial court determined that the case did not sound in malpractice. Because, as discussed above, the policy only covered malpractice, garnishee-defendant had no duty to defend a claim not sounding in malpractice. Therefore, it did not breach its duty to defend.

[1] The majority opinion has the effect of allowing insurance companies to circumvent the clear terms of an insurance policy and disclaim respon-

I. PLAINTIFF'S CLAIMS SOUND IN MEDICAL MALPRACTICE

The majority's conclusion that the professional liability policy does not provide coverage in the instant case turns on its determination that the first amended complaint did not sound in medical malpractice. *Ante* at 462. According to the majority, because the language in the insurance policy limiting coverage to damages arising out of "professional services" and "professional incident[s]" is synonymous with "malpractice," defendant is not entitled to coverage. I respectfully disagree. Although the parties do not challenge the trial court's determination that plaintiff's claims do not sound in medical malpractice, " 'this Court may go beyond the issues raised on appeal and address issues that, in this Court's opinion, justice requires be considered and resolved.' " *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 57; 602 NW2d 215 (1999), quoting *Frericks v Highland Twp*, 228 Mich App 575, 586; 579 NW2d 441 (1998).[2]

---

sibility for defending an insured. At the same time, the majority opinion permits plaintiffs' attorneys to wrongfully evade the heightened procedural requirements of a medical malpractice claim, MCL 600.2912b, 600.2912d, by artfully drafting a complaint. Both parties have the potential to emerge victorious at the expense of the insured. This presents what I consider to be an abhorrent result.

[2] The determination that plaintiff's claims do not sound in medical malpractice is central to the majority's analysis. *Ante* at 462, n 2. I am not surprised that, in this comedy of errors, neither party has directly raised the issue in their briefs on appeal. I would note that the complex nature of insurance defense litigation precludes garnishee-defendant from directly raising the issue on appeal, given that it was not a party to the action in which the trial court determined that this case did not sound in medical malpractice. Garnishee-defendant became directly involved as a party only when plaintiff instituted garnishment proceedings in the lower court. In addition, garnishee-defendant would not be wise to raise the issue given that it would amount to a concession that coverage is provided by the professional liability insurance policy. Moreover, plaintiff would be loath

In *Dorris v Detroit Osteopathic Hosp Corp* and its companion case *Gregory v Heritage Hosp*, 460 Mich 26; 594 NW2d 455 (1999), our Supreme Court recognized that " '[a] complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence.' " *Id.* at 43, quoting *McLeod v Plymouth Court Nursing Home*, 957 F Supp 113, 115 (ED Mich, 1997), in turn citing *MacDonald v Barbarotto*, 161 Mich App 542; 411 NW2d 747 (1987). In other words, " '[t]he key to a medical malpractice claim is whether it is alleged that the negligence occurred within the course of a professional relationship.' " *Dorris, supra* at 45, quoting *Bronson v Sisters of Mercy Health Corp*, 175 Mich App 647, 652; 438 NW2d 276 (1989).

In the context of ruling on defendant's[3] motion to dismiss the first amended complaint, the trial court concluded that plaintiff's claims did not allege medical malpractice. It is significant that the trial court's decision in this regard was based solely on plaintiff's attorney's representations on the record. During the hearing on defendant's motion to dismiss, plaintiff's attorney strenuously objected to any characterization of plaintiff's claims as alleging medical malpractice.

---

to classify the instant action as one sounding in medical malpractice given the pains plaintiff's attorney took in the lower court to avoid characterizing it as such, presumably to evade the procedural requirements of a medical malpractice claim.

[3] The motion was in fact initially brought by defendants THS Partners I (THS I), THS Partners II (THS II), and Transitional Health Services, Inc., doing business as Fenton Extended Care Center, with defendant Garfield concurring. THS I, THS II, and Transitional Health Services, Inc., were dismissed as parties in the lower court in a consent judgment entered August 24, 1998, and are not parties to this appeal.

As a result, during the hearing on the motion to dismiss, the trial court stated:

> The defendants have argued that, in reality, plaintiff is asserting a medical malpractice claim. Plaintiff's counsel says that that's not true. And I have—I don't believe that we should require the plaintiff to allege and prove a claim that the plaintiff asserts is not being pled.
>
> Another way to say this is that I'm taking [plaintiff's attorney] at his word. And [plaintiff's attorney] says he doesn't have a medical malpractice claim, I accept that. And I have addressed the specific Counts in the context of what [plaintiff's attorney] asserts they allege.[4]

In my view, rather than relying exclusively on plaintiff's attorney's representations to discern whether plaintiff's claims sounded in medical malpractice, a better approach is a thorough review of the first amended complaint.[5] See *Simmons v Apex Drug Stores, Inc*, 201 Mich App 250, 253; 506 NW2d 562 (1993). As our Supreme Court instructed in *Dorris, supra*, the question whether a claim implicates medical malpractice rather than ordinary negligence "depends on whether the facts [in the complaint] raise issues that are within the common knowledge and experience of the jury or, alternatively, raise

---

[4] The trial court went on to observe that "plaintiff represents to the Court that there is no claim of medical malpractice asserted here . . . ." Consequently, in its August 15, 1997, order denying the motion to dismiss, the trial court labeled count I of the first amended complaint as alleging "Intentional Tort: Battery/Murder," count II as alleging "Gross Negligence," and count III as alleging "Ordinary Negligence."

[5] I find it troubling that the majority allows plaintiff's attorney's representations regarding the nature of the suit to dictate its decision that the insurance policy does not provide coverage in the instant case. By doing so, the majority fails to recognize that the insured's actions, together with the policy language, should determine insurance coverage.

questions involving medical judgment." *Dorris, supra* at 46.

A review of the first amended complaint leads me to conclude that the thrust of plaintiff's claims was that defendant was negligent in the course of his professional treatment of plaintiff's decedent, Charles Dolan, by withholding food, liquid, and oral medication from the decedent without consulting the decedent's living will. These allegations clearly involve questions of professional judgment not within the ordinary knowledge and experience of the jury. *Id.* Accordingly, the trial court erred in concluding that plaintiff's claims did not allege medical malpractice. In my view, the first amended complaint is a clear example of an attempt to evade the medical malpractice action procedural requirements by couching the cause of action in terms of ordinary negligence and intentional misconduct. *Id.* at 43.

## II. GARNISHEE-DEFENDANT BREACHED ITS DUTY TO DEFEND

That garnishee-defendant wrongfully breached its duty to defend in the present case is also apparent from a review of the first amended complaint. It is axiomatic that an insurer's duty to defend is broader than the duty to indemnify. *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 450; 550 NW2d 475 (1996) (*American Bumper II*). In *Radenbaugh v Farm Bureau General Ins Co of Michigan*, 240 Mich App 134, 137; 610 NW2d 272 (2000), this Court recently articulated the well-settled principles governing an insurer's duty to defend in Michigan. As the *Radenbaugh* Court observed, " 'if the allegations of the underlying suit *arguably* fall within the coverage of the policy, the insurer has a duty to

defend its insured.' " *Id.*, quoting *Royce v Citizens Ins Co*, 219 Mich App 537, 543; 557 NW2d 144 (1996) (emphasis supplied), in turn citing *American Bumper & Mfg Co v Hartford Fire Ins Co*, 207 Mich App 60, 67; 523 NW2d 841 (1994) (*American Bumper I*), aff'd 452 Mich 440; 550 NW2d 475 (1996).

> "An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v Central Mutual Ins Co*, 81 Mich App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third-party's allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v Maryland Casualty Co*, 73 Mich App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch on Insurance 2d, § 51:45, p 538." [*Radenbaugh, supra* at 137-138, quoting *Western Casualty & Surety Group v Coloma Twp*, 140 Mich App 516, 520-521; 364 NW2d 367 (1985), in turn quoting *Detroit Edison Co v Michigan Mut Ins Co*, 102 Mich App 136, 141-142; 301 NW2d 832 (1980).]

Thus, in simple terms, an insurer's duty to defend " 'arises . . . from the language of the insurance contract.' " *Michigan Educational Employees Mut Ins Co v Turow*, 242 Mich App 112, 117; 617 NW2d 725 (2000), quoting *Stockdale v Jamison*, 416 Mich 217, 224; 330 NW2d 389 (1982). Moreover, an insurer's duty to defend hinges on the threshold determination regarding the scope of available coverage. *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 315; 575 NW2d 324 (1998). If coverage is not provided under the policy, it follows that the

insurer is not under a duty to defend. However, in some circumstances, the extensive scope of an insurer's duty to defend may require that it defend otherwise frivolous or groundless lawsuits. *American Bumper II, supra* at 451.

In my opinion, garnishee-defendant breached its duty to defend Garfield in the instant action, because the theories set forth in the first amended complaint clearly fell within the coverage of the policy. Count I of the first amended complaint alleged that "defendants intentionally, knowingly, and with premeditation, killed Plaintiff's decedent . . . ." A plain reading of the first amended complaint reveals that this artful drafting on the part of plaintiff's attorney is nothing more than an attempt to disguise what would otherwise be classified as a medical malpractice claim as a claim alleging murder. Even assuming that this was a theory not covered under the policy, counts II and III of the first amended complaint, alleging negligence in the course of medical treatment, were theories "arguably" within the confines of the policy that invoked garnishee-defendant's duty to defend. *Radenbaugh, supra* at 137.

### III. THE CLEAR AND UNAMBIGUOUS LANGUAGE OF THE INSURANCE POLICY PROVIDES COVERAGE

In my opinion, the majority errs in concluding that the professional liability insurance policy does not provide coverage in the instant case. In contrast, I agree with the trial court's determination that the clear and unambiguous language of the insurance policy provides coverage for damages arising from plaintiff's claims.

This Court interprets an insurance policy in much the same manner as any other contract, striving to give effect to the parties' intentions and the policy's clear and unambiguous language. *Auto-Owners Ins Co v Harrington*, 455 Mich 377, 381; 565 NW2d 839 (1997). "[T]he construction and interpretation of an insurance contract is a question of law for a court to determine" that is reviewed de novo by this Court. *Henderson v State Farm Fire & Casualty Co*, 460 Mich 348, 353; 596 NW2d 190 (1999). Likewise, whether contract language is ambiguous is also a question of law subject to review de novo. *Id.* As our Supreme Court observed in *American Bumper II*, *supra* at 447-448:

"Unlike most contractual relationships, where the parties negotiate contract terms, the terms of liability insurance contracts are standardized and are drafted by the insurance industry. Policyholders have little or no bargaining power to change terms. Consequently, in construing insurance contracts, any ambiguities are strictly construed against the insurer to maximize coverage.

"An insurance contract is ambiguous when its provisions are capable of conflicting interpretations." *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999). However, the mere fact that contractual language may be difficult to apply in a certain factual situation does not itself render contractual language ambiguous. See *Henderson, supra* at 357, n 10.

A review of the clear and unambiguous language of the insurance policy in the instant case convinces me that it provided coverage for damages resulting from plaintiff's allegations of negligence on the part of

defendant. The insurance policy at issue provides in pertinent part:

> ICW agrees with *you* to pay on *your* behalf sums that *you* shall become legally obligated to pay as *damages* because of a *professional incident* to which this *policy* applies, which results from *your* rendering of, or *your* failure to render, *professional services* in the practice of *your* profession . . . . [Emphasis in original.]

As this Court recognized in *Cavalier Mfg Co v Employers Ins of Wausau (On Remand)*, 222 Mich App 89, 94; 564 NW2d 68 (1997), "the terms of an insurance contract are interpreted according to the definitions set forth therein . . . ."[6] In the present case, the insurance policy defines "professional services" as "the delivery of medical services by the individual Named Insured to a patient as permitted by license as

---

[6] I find the present case analogous to *Cavalier, supra. Cavalier* involved a declaratory action between the plaintiff employer and its insurer to determine whether allegations by the plaintiff's employee fell within the coverage provided by the insurance policy. In a separate prior action, the plaintiff's employee had drafted the complaint to allege an intentional tort in an attempt to avoid the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.101 *et seq. Cavalier, supra* at 91-92. The plaintiff employer moved for summary disposition, arguing that the employee's allegations did not rise to the level of an intentional tort. The trial court denied the plaintiff employer's motion. Rather than continuing to defend the plaintiff employer and seek appellate review of the ruling, the defendant insurer "abandoned" its defense of the plaintiff. *Id.* at 92, n 2. Consequently, in *Cavalier, supra,* this Court was placed in "the awkward position" of having to resolve the action adversely to the defendant insurer in spite of its determination that summary disposition was originally improperly denied. *Id.*

The instant case presents this Court with a similar dilemma. Although I am loath to reward plaintiff for his deception in the lower court, I believe preservation of the overriding principle in this case, the insurer's duty to defend, mandates this result. Additionally, "had [garnishee-defendant] continued its defense of [defendant], it would not now find itself in this situation." *Id.*

a Medical Doctor or Doctor of Osteopathy." A "professional incident" is further defined as

> an act or omission (or series of related acts or omissions), that . . . occurs . . . in the furnishing of *professional services* by the individual Named Insured . . . to a patient, that may result in *your* liability for *damages*. [Emphasis in original.]

In my view, the clear language of the policy demonstrates that it provides coverage in the instant case, where it is undisputed that (1) defendant was delivering medical services to the decedent and (2) plaintiff alleged that defendant wrongfully withheld food, liquid, and oral medications from the decedent during the course of treatment. In his deposition testimony,[7] defendant testified that he became the decedent's treating physician when the decedent was admitted to Fenton Extended Care Center in March 1994. Defendant further indicated that he was responsible for examining the decedent, diagnosing his ailments, and prescribing medications for the decedent, and that he decided to withdraw food, liquids, and oral medications from the decedent at the request of the decedent's wife and stepson. I believe that defendant's actions, taken in the context of a professional relationship providing medical treatment to the decedent, fall squarely within the purview of "professional services" and a "professional incident" as defined by the clear language of the policy.

---

[7] The trial court entered judgment in favor of plaintiff in the context of entertaining garnishee-defendant's motion for summary disposition under MCR 2.116(C)(10). Thus, consideration of defendant's deposition is proper. See *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

The majority holds that coverage is not available under the policy because the terms "professional services" and a "professional incident" are "synonymous" with "malpractice." *Ante*, at 462. After reviewing the policy as a whole, I do not accept the majority's contention that the policy is intended to limit coverage to damages arising solely from actions that fall within the precise definition of "malpractice." In my opinion, to hold otherwise would require this Court to undertake a "technical and strained" construction of the contract terms, rather than according the terms their plain and ordinary meaning. *Royce, supra* at 542; *Fitch v State Farm Fire & Casualty Co*, 211 Mich App 468, 471; 536 NW2d 273 (1995).[8] In any event, because the first amended complaint clearly raised issues regarding defendant's alleged misconduct during the delivery of medical services to the decedent, defendant is liable for damages resulting from a "professional incident," and garnishee-defendant was obligated to indemnify defendant.

## IV. RESPONSE TO THE MAJORITY OPINION

Contrary to the majority's misguided accusation, I am not attempting "to find a basis to allow [plaintiff] to win." *Ante* at 465, n 3. Indeed, I am reluctant to allow such a result in a case where plaintiff's attorney's drafting of the first amended complaint was nothing short of subterfuge. The present case places this Court in the unenviable position of having to choose between what Justice Sutherland aptly

---

[8] Our Supreme Court recently cautioned against "pervert[ing]" the plain meaning of a word or creating ambiguity in an insurance contract "where the terms of the contract are clear and precise." *Henderson, supra* at 354.

described as "[a] rock and [a] whirlpool." *Frost v Railroad Comm of California*, 271 US 583, 593; 46 S Ct 605; 70 L Ed 1101 (1926). It cannot be gainsaid that I share the majority's concern that plaintiff should not be permitted to profit from the sham promulgated in the lower court. However, where I break ranks from the majority is that I refuse to view the present case as a simple choice of favoring either a plaintiff's attorney or an insurance company. Rather than taking sides, my position on this case is motivated by my conviction that the principle at issue here, the insurer's duty to defend, reigns supreme. I fervently believe that an insurer that deliberately breaches its duty to defend should bear the consequences of its actions.

Moreover, unlike the majority, I cannot escape the conclusions that, regardless of the language employed in the first amended complaint, (1) the insurance policy provided coverage for plaintiff's claims and (2) garnishee-defendant breached its duty to defend. Had garnishee-defendant adhered to its duty to defend rather than abandoning defendant at the first opportunity, the fallacious nature of plaintiff's first amended complaint would undoubtedly have been revealed. As this Court observed in *Radenbaugh, supra*: " 'The duty to defend cannot be limited by the precise language of the pleadings. *The insurer has the duty to look behind the third-party's allegations to analyze whether coverage is possible.*' " *Radenbaugh, supra* at 137-138, quoting *Western Casualty, supra* (emphasis supplied). In my opinion, a logical corollary of this rule is that garnishee-defendant is required to look not only beyond the language of the pleadings to discern whether coverage is provided under the policy

but also beyond plaintiff's attorney's representations regarding the nature of the claim. If garnishee-defendant had properly looked beyond the "precise language" of the first amended complaint and plaintiff's attorney's characterization of the claims, it would have discovered that the thrust of the first amended complaint, alleging defendant's wrongful withholding of food, liquid, and oral medications from the decedent during the course of professional treatment, was covered by the insurance policy.

Presented with the issue whether the insurance policy provides coverage, the majority bases its conclusion solely on the specific language employed by plaintiff's attorney in the first amended complaint and plaintiff's attorney's representations that this is not a medical malpractice claim. Thus, according to the majority view, plaintiffs' attorneys may now successfully avoid an aggressive defense by a physician's insurer by manipulating the language in the complaint to avoid the medical malpractice procedural requirements. Interestingly, it was this manner of disingenuous behavior on the part of a plaintiff's attorney that the Supreme Court counseled against in *Dorris, supra.*

The majority's refusal to look beyond the language employed in the first amended complaint is inconsistent with the practical purpose of an insurance contract. Ordinary citizens routinely purchase insurance to address occasions where their *actions* cause injury to others. Accordingly, the determination whether an insurance policy provides coverage should be governed by the individual's alleged actions in a case, not by the language used in a complaint. In the instant case, it is not disputed that defendant Garfield was

rendering medical services to the decedent at the time of his death in April 1994. I cannot think of a more cogent example of a "professional incident" as defined by the insurance policy. In my opinion, the denial of coverage in the instant case is nothing short of a miscarriage of justice. While I disfavor the gamesmanship that occurred in the lower court, I refuse to adopt the majority's result-oriented line of reasoning that ignores the plain language of the policy.[9]

### V. CONCLUSION

Finally, I agree with the trial court that where defendant entered into a fair and reasonable settlement after garnishee-defendant wrongfully breached its duty to defend, garnishee-defendant cannot now be heard to complain that it should not be bound by the settlement.

> When an insurer breaches its own policy of insurance by refusing to fulfill its duty to defend the insured, the insurer is bound by any reasonable settlement entered into in good faith between the insured and the third party. [*Alyas v Gillard*, 180 Mich App 154, 160; 446 NW2d 610 (1989), citing with approval *Detroit Edison Co, supra* at 144.]

See also *Elliott v Casualty Ass'n of America*, 254 Mich 282, 287-288; 236 NW 782 (1931).

---

[9] The majority opinion rewards an insurance company for failing to defend its insured. In my view, a more prudent course of action for garnishee-defendant would have been to continue its defense of Garfield in spite of the trial court's ruling that this claim did not sound in medical malpractice. Specifically, garnishee-defendant should have sought appellate review of the trial court's erroneous determination, rather than abandoning its defense of Garfield.

.

In my opinion, to hold otherwise in the instant case would allow garnishee-defendant "to benefit by sitting idly by, knowing of the litigation, and watching its insured become prejudiced." *Alyas, supra* at 160.

For these reasons, I would affirm the trial court's entry of judgment in favor of plaintiff.[10]

---

[10] Had the trial court properly restrained plaintiff's attorney from engaging in such shenanigans, rather than allowing him to make a mockery of the lower court proceedings, this Court may not have been compelled to wade into these murky waters.