RADENBAUGH v FARM BUREAU GENERAL INSURANCE COMPANY
OF MICHIGAN

Docket No. 212080. Submitted January 5, 2000, at Lansing. Decided March
3, 2000, at 9:20 A.M. Leave to appeal sought.

Ralph Radenbaugh and others brought an action in the Ogemaw Cir-
cuit Court against Farm Bureau General Insurance Company of
Michigan, their commercial general liability insurer, alleging that
the defendant breached its duty to defend and indemnify the plain-
tiffs in an action brought against them by John and Josephine
Tornow. The plaintiffs had sold a mobile home to the Tornows and
had provided schematics and instructions to contractors hired by
the Tornows for the construction of the home's basement founda-
tion and the erection of the home on its basement. Because a
wrong schematic had been provided to the basement contractor,
Leelanau Redi-Mix, damage to the mobile home and the basement
foundation resulted after the erection of the home on its basement
foundation. The plaintiffs had paid a sum to the Tornows in settle-
ment of the Tornows' action, in which the Tornows alleged, among
other things, negligence, breach of contract, breach of warranty,
fraud, and violations of the Consumer Protection Act. In the
Tornows' action, the plaintiffs had brought a third-party action
against Leelanau Redi-Mix, for which the plaintiffs were sanctioned
under MCR 2.114(D). In the plaintiffs' action, on cross-motions for
summary disposition, the court, Ronald M. Bergeron, J., granted
partial summary disposition for the plaintiffs, ordering the defend-
ant to pay the plaintiffs the amount they paid to settle the Tornows'
action and the plaintiffs' attorney fees in the Tornow action, but
denying the plaintiffs' request that the defendant be ordered to
indemnify plaintiffs for the sanctions the plaintiffs paid to Leelanau
Redi-Mix and the request that the defendant pay the attorney fees
incurred by the plaintiffs in their action. The defendant appealed,
and the plaintiffs cross appealed.

The Court of Appeals *held*:

1. The defendant's policy covers property damage if it is caused
by an occurrence. The policy defines "occurrence" to mean an acci-
dent. An occurrence transpires with respect to an insured's defec-
tive workmanship if damage extends not only to the insured's prod-
uct but also to the property of another. Here, an occurrence tran-

spired so as to trigger coverage under the defendant's policy because the plaintiffs' erroneous schematic and faulty instructions regarding the mobile home's basement foundation resulted in damage to its product, the mobile home, as well as to the property of the Tornows, their basement.

2. The "intentional acts" exclusion of the policy did not relieve the defendant of its duty to defend and indemnify the plaintiffs in the Tornows' action because the theories of liability asserted by the Tornows were not limited to intentional acts. An insurer has a duty to defend, despite theories of liability asserted against an insured that are not covered under the policy, if there are any theories of recovery that fall within the policy.

3. The "business risks" exclusion of the policy, which provides that coverage does not extend to property damage to the insured's product, does not apply because property damage was not limited to the plaintiffs' product and included damage to the Tornows' property.

4. The trial court did not err in refusing to order the defendant to indemnify the plaintiffs for the attorney fees and sanctions assessed against the plaintiffs for the filing of a frivolous third-party complaint against Leelanau Redi-Mix. Although the defendant had a duty to defend the plaintiffs against the Tornows' action, the defendant cannot be held responsible for unreasonable and frivolous conduct taken by the plaintiffs' retained counsel.

5. The trial court did not err in denying the plaintiffs' motion for an award of attorney fees they incurred in their action against the defendant. Under the American rule, absent a statute or court rule authorizing the award of attorney fees, each side is responsible for its attorney fees. The plaintiffs have not argued that a statute, court rule, or contract entitles them to an award of attorney fees.

Affirmed.

1. INSURANCE — COMMERCIAL LIABILITY — PROPERTY DAMAGE — DEFECTIVE WORKMANSHIP.

An occurrence, defined in a commercial general liability insurance policy as an accident and for which the policy provides coverage for property damage resulting therefrom, transpires with respect to property damage sustained by another as a result of the insured's defective workmanship.

2. INSURANCE — LIABILITY — INSURER'S DUTY TO DEFEND INSURED.

A liability insurer has a duty to defend its insured against an action brought against the insured, despite theories of liability asserted against the insured that are not covered under the policy, if there are any theories of recovery that fall within the policy.

3. ATTORNEY AND CLIENT — ATTORNEY FEES — AMERICAN RULE.
    A party to an action is responsible for its attorney fees absent a stat-
    ute or court rule authorizing the award of attorney fees.

*Dewey & Schultz* (by *Garner F. Dewey*), for the plaintiffs.

*Willingham & Coté, P.C.* (by *Anthony S. Kogut*), for the defendant.

Before: SMOLENSKI, P.J., and GRIFFIN and NEFF, JJ.

GRIFFIN, J. This is a breach of contract action by plaintiffs Ralph Radenbaugh, Nila Radenbaugh, and Radco Enterprises, Inc., (herein collectively referred to as Radenbaugh) against their insurance carrier, defendant Farm Bureau General Insurance Company of Michigan, for defendant's alleged breach of its duty to defend and indemnify plaintiffs in a prior action brought against them by John M. Tornow and Josephine J. Tornow in the Benzie Circuit Court.

The underlying case arose out of the sale of a double-wide Commodore Homes of Indiana mobile home by Radenbaugh to the Tornows (herein collectively referred to as Tornow). In conjunction with the sale, Radenbaugh provided erroneous schematics and instructions to contractors hired by Tornow for the construction of the home's basement foundation and erection of the home on its basement. It was alleged and later proved at trial that Radenbaugh's conduct caused damage to the home and its basement. In response to the lawsuit filed by Tornow against Radenbaugh, defendant Farm Bureau refused to defend or indemnify its insured under a commercial general liability policy, thereby triggering the instant breach of contract action.

In the present case, plaintiffs and defendant filed cross-motions for summary disposition based on a detailed stipulated statement of facts. Plaintiffs' motion for summary disposition was granted in part in that the circuit court ruled that defendant breached its duty to defend and indemnify its insured in the previous action. Defendant Farm Bureau was ordered to pay the $11,000 settlement made by plaintiffs, as well as plaintiffs' attorney fees of $33,634.50 incurred in the underlying action. However, the circuit court denied plaintiffs' request that defendant indemnify plaintiffs for $22,600 in sanctions awarded against plaintiffs for filing a third-party action against the basement contractor, Leelanau Redi-Mix, and denied plaintiffs' request for $22,736 in attorney fees for prosecuting the present case. Defendant appeals as of right, and plaintiffs cross appeal. We affirm.

I

It is well settled that "if the allegations of the underlying suit arguably fall within the coverage of the policy, the insurer has a duty to defend its insured." *Royce v Citizens Ins Co*, 219 Mich App 537, 543; 557 NW2d 144 (1996), citing with approval *American Bumper & Mfg Co v Hartford Fire Ins Co*, 207 Mich App 60, 67; 523 NW2d 841 (1994), aff'd 452 Mich 440; 550 NW2d 475 (1996). Further,

> [a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Dochod v Central Mutual Ins Co*, 81 Mich App 63; 264 NW2d 122 (1978). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third-party's

allegations to analyze whether coverage is possible. *Shepard Marine Construction Co v Maryland Casualty Co*, 73 Mich App 62; 250 NW2d 541 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. 14 Couch on Insurance 2d, § 51:45, p 538. [*Western Casualty & Surety Group v Coloma Twp*, 140 Mich App 516, 520-521; 364 NW2d 367 (1985), quoting with approval *Detroit Edison Co v Michigan Mut Ins Co*, 102 Mich App 136, 141-142; 301 NW2d 832 (1980).]

Also, the following fundamental principles of insurance law apply:

It is well settled in Michigan that an insurer's duty to defend is broader than its duty to indemnify. *Auto-Owners Ins Co v City of Clare*, 446 Mich 1, 15; 521 NW2d 480 (1994). In order to determine whether an insurer has a duty to defend its insured, this Court must look to the language of the insurance policy and construe its terms to find the scope of the coverage of the policy. *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 402; 531 NW2d 168 (1995). Generally, an insurance policy is a contract between the insurer and the insured. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). If a trial court is presented with a dispute between these parties over the meaning of the policy, the trial court must determine what the agreement is and enforce it. *Kass v Wolf*, 212 Mich App 600, 604; 538 NW2d 77 (1995). When determining what the parties' agreement is, the trial court should read the contract as a whole and give meaning to all the terms contained within the policy. *Churchman, supra* at 566. The trial court shall give the language contained within the policy its ordinary and plain meaning so that technical and strained constructions are avoided. *Hosking v State Farm Mutual Automobile Ins Co*, 198 Mich App 632, 633-634; 499 NW2d 436 (1993). A policy is ambiguous when, after reading the entire document, its language can be reasonably understood in different ways. *Trierweiler v Frankenmuth Mutual Ins Co*, 216 Mich App 653, 656-657; 550 NW2d 577

(1996).   If the trial court determines that the policy is ambiguous, the policy will be construed against the insurer and in favor of coverage. *Heniser v Frankenmuth Mutual Ins Co*, 449 Mich 155, 160; 534 NW2d 502 (1995). However, if the contract is unambiguous, the trial court must enforce it as written. *Arco, supra* at 403. [*Royce, supra* at 542-543.]

Despite the parties' attempt to stipulate the facts, a factual dispute exists regarding whether defendant was given notice of the third, fourth, and fifth amended complaints filed in the underlying action. Defendant admits receiving notice and a demand to defend plaintiffs' second amended complaint. Because it is not the function of the court to resolve genuine issues of material fact in ruling on motions for summary disposition, *Manning v Hazel Park*, 202 Mich App 685, 689; 509 NW2d 874 (1993), we will confine our analysis to the second amended complaint.

Unlike later complaints, the second amended complaint in the action by Tornow against the plaintiffs was inartfully drafted. While the general allegations of the complaint sound in negligence, breach of contract, and breach of warranty, count I is entitled "fraud and misrepresentations"; count II, while untitled, requests the circuit court to set aside as void the real estate deed; and count III is captioned "claim for relief under the consumer protection act." Although it is obvious there are theories alleged in the complaint for which there is no coverage under the general commercial liability insurance policy, it was the obligation of the circuit court to determine "if the allegations of the underlying suit arguably fall within the coverage of the policy." *Royce, supra* at 543. After reviewing the policy in depth, we agree with the circuit court that the allegations contained in the second

amended complaint arguably fall within coverage and therefore defendant breached its duty to defend. Further, in view of the factual findings made in the prior action at the conclusion of the nonjury trial, we hold the lower court correctly ruled that defendant breached its duty to indemnify plaintiffs for their settlement of $11,000 and attorney fees of $33,634.50.

II

Defendant's first argument on appeal is that it owed no duty to defend or indemnify because an "occurrence," as defined by its policy, was not alleged. We disagree.

Defendant notes that the commercial liability policy at issue provides, in general, that "bodily injury" or "property damage" is covered if caused by an "occurrence." "Occurrence" is defined by the policy as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

Relying almost exclusively on *Hawkeye-Security Ins Co v Vector Const Co*, 185 Mich App 369; 460 NW2d 329 (1990), defendant argues in its appellate brief that the second amended complaint alleged claims

> for breach of contract, defective workmanship and breach of warranties [which are] clearly not covered by commercial liability insurance such as that offered through the Farm Bureau policy. Simply put, commercial liability policies do not insure the policyholder for breach of contract, breach of warranty claims, and shoddy workmanship claims.

Were the underlying complaint limited to claims relating solely to the insured's product, we would agree with defendant. However, it is clear that the underlying complaint alleged damages broader than mere diminution in value of the insured's product caused by alleged defective workmanship, breach of contract, or breach of warranty. Plaintiffs not only sold the double-wide mobile home in question, it was also alleged in the complaint and proved at trial that plaintiffs provided instructions and schematics to contractors hired by Tornow for the construction of the basement and for the erection of the mobile home on its basement. In this regard, paragraph ten of the second amended complaint alleged

> the setting of the mobile home on the foundation which was prepared by subcontractors in conformity with specific written instructions from Radco and defendant Radenbaugh, was so defective that the Benzie County housing inspector would not issue a certificate of occupancy and has to this date refused to issue a certificate of occupancy. That said building inspector issued a written directive on November 7, 1991, specifically describing defects which precluded the issuance of an occupancy permit. That a copy of said written directive is appended hereto as Exhibit F.

Attached to the second amended complaint as Exhibit F was a letter from the Benzie County Building Department specifying the following construction defects:

> 1. It was noted that the center I-beam support is obstructing the head clearance at base of stairway. This beam should be cut out and properly secured at each end to provide proper head clearance.

2. The outside poured basement wall where pockets were left to carry the steel beams were improperly closed in to prevent air from entering the basement.

3. The home was not properly secured to the foundation.

4. The gable ends of the home are not setting on the foundation. It will be required to install proper support jacks in the above-mentioned area.

5. Where the two halves join at the center of the house, the support jacks in the basement are adjusted too high therefore causing a rise in the flooring in that area. The post should be realigned to obtain proper alignment resulting in the leveling of the floor area.

The damages claimed in paragraph seventeen included "$4,280.00 for removal of existing defective basement foundation slab and wall and $9,711.00 for the construction of a new basement foundation, concrete slab, waterproof foundation wall curing, sill plate code approved anchors."

Further, paragraph fifteen sought consequential damages arising out of the following conditions:

That currently, because of the defect in the structure and the defects in the heating system, the home is drafty, virtually unheatable and has cost an extraordinary high amount for the purpose of heating fuel. In addition, *water is seeping into and condensing on basement walls, constituting a threat of rot, causing mildew and mold and other health hazards and rendering the basement totally unusable.* [Emphasis added.]

In the prior action, Tornow settled with the manufacturer of the mobile home, Commodore Homes of Indiana, for the sum of $25,000. Although not specified, this settlement appears to be in settlement for damages to the mobile home itself. Tornow's claim against Radenbaugh proceeded to a nonjury trial before Benzie Circuit Judge James M. Batzer. In a

written opinion, Judge Batzer found in favor of Tornow against Radenbaugh finding, among other things,

> the home was shoddy in fit and finish.
> Defendant provided the wrong basement schematic to the basement contractor resulting in the placement of an I-beam directly across the stairway resulting in a dangerous condition . . . .

In addition, the numerous defects noted by the building inspector were found as fact by the trial court. The court concluded:

> The Court finds that the home is riddled with defects, and is of a definite and decided inferior quality in its construction and erection on the site so as to be nearly uninhabitable as a practical matter.

Judgment was entered in favor of Tornow against Radenbaugh.

Following entry of the judgment, Tornow and Radenbaugh entered into a settlement in which the judgment was satisfied for the sum of $11,000. A separate third-party complaint filed by Radenbaugh against the basement contractor, Leelanau Redi-Mix, was subsequently dismissed by the circuit court through a motion for summary disposition. In granting summary disposition in favor of Leelanau Redi-Mix, the trial court also awarded the third-party defendant attorney fees and actual expenses in the sum of $22,600 as a sanction against Radenbaugh.

In *Vector, supra* at 378, this Court held: "we hold that the defective workmanship of Vector, *standing alone*, was not the result of an occurrence within the meaning of the insurance contract." (Emphasis

added.) In so holding, we discussed with approval *Bundy Tubing Co v Royal Indemnity Co*, 298 F2d 151 (CA 6, 1962), but eventually distinguished *Bundy* on its facts. In *Bundy*, the insured's defective workmanship caused damage to the property of others. The property damage that was not confined to the insured's own work product was deemed to be "unforeseen, unexpected, and unintended and therefore an occurrence." Further, the United States Court of Appeals for the Sixth Circuit rejected defendant's argument that an occurrence cannot arise based on the insured's negligence or breach of warranty. The *Bundy* court stated:

> The fact that the claims here involved breach of warranty or negligence did not remove them from the category of accident. Bundy would not be legally obligated to pay a claim arising out of an accident occurring without its negligence or breach of warranty. *If the liability policy were construed so as to cover only accidents not involving breach of warranty or negligence, then no protection would be given to the insured.* The insured would not need liability insurance which did not cover the only claims for which it could be held liable. The word "accident" is common in most liability policies and should not be construed in this type of case as not including claims involving negligence or breach of warranty. [*Id.* at 153 (emphasis added).]

Consistent with *Bundy* and contrary to the facts in *Vector*, the underlying action alleged more than damage to the insured's own product. In particular, it was alleged that because of plaintiffs' defective instructions to the basement contractor, Leelanau Redi-Mix, the basement of the mobile home was improperly constructed and the mobile home was incorrectly erected. As a result of defendant's faulty instructions, the basement was rendered unusable because "water

is seeping into and condensing on basement walls, constituting a threat of rot, causing mildew and mold and other health hazards."

Federal authority not cited or distinguished by defendant supports the lower court's ruling that an occurrence transpired under these circumstances. In *Calvert Ins Co v Herbert Roofing & Insulation Co*, 807 F Supp 435 (ED Mich, 1992), the federal district court of the eastern district of Michigan addressed facts substantially similar to the present case. In *Calvert*, defendant Herbert Roofing installed a roof at an elementary school. Shortly after the project was completed, the new roof began leaking. The water from the roof caused damage to the foundation of the school and to the building's walls, ceiling tile, light fixtures, lockers, and flooring. Plaintiff Calvert Insurance Company argued that there was no occurrence under the policy because the claim was predicated on its insured's defective workmanship. The federal district court disagreed:

> Relying primarily on *Hawkeye-Security Ins Co v Vector Construction Co*, 185 Mich App 369; 460 NW2d 329 (1990), Plaintiff argues that there was no accident in this case and thus no occurrence to trigger its obligations under the insurance policy. In *Vector*, the insured (Vector Construction) performed all concrete work involved in an improvement project at a wastewater treatment plant. When the owner of the plant discovered that the concrete Vector had used did not meet project specifications, Vector was forced to remove and repour some 13,000 yards of concrete. Vector sought indemnity from its insurance carrier pursuant to the terms of a comprehensive liability policy substantially similar to the policy at issue in this action. The Michigan Court of Appeals determined that the insurer owed no duty to defend or indemnify Vector because "the defective workmanship of Vector, standing alone," was not the result of,

nor did it constitute, an "occurrence" within the meaning of the insurance contract. *Id.* at 378-379. Plaintiff argues that the holding in *Vector* requires the Court to deny coverage in this case because the damage at issue here was caused by Herbert's defective workmanship, and thus there is no "occurrence" within the meaning of the insurance policy.

Defendants acknowledge the holding in *Vector*, but rely on *Bundy Tubing Co v Royal Indemnity Co*, 298 F2d 151 (CA 6, 1962). In *Bundy*, the insured was the manufacturer of radiant heat tubing which was installed in the concrete floors of buildings. A defect in the tubing caused it to leak, which in turn caused damage to certain furnishings (rugs, drapes, etc.) inside the buildings. In order to replace the defective tubing, portions of the concrete floors had to be removed and repoured. The owners of several of the buildings brought suit against the insured alleging breach of warranty and negligence. The insurer agreed to indemnify only for the cost of replacing the various damaged furnishings, *id.* at 153, and the insured brought suit to recover for the other alleged damages, including the cost of removing and repouring the concrete floors. The Sixth Circuit held that the insurer was required to indemnify the insured for the cost of removing the defective tubing and the cost of installing new tubing (i.e., for the concrete work), but not for the cost of the new tubing itself. *Id.* at 154.

At first blush, the result in *Bundy* appears to be inconsistent with the result in *Vector*. Whereas the *Vector* court held there was no coverage for damage arising out of the insured's defective workmanship, in *Bundy* the Sixth Circuit held that the insurer was required to pay for damage arising out of the insured's defective workmanship. In view of this apparent inconsistency, Plaintiff asserts that *Vector* "expressly discounted" the reasoning and result in *Bundy*, (Plaintiff's reply brief, p 4).

Plaintiff's interpretation of the *Vector* case is erroneous. The *Vector* court acknowledged the Sixth Circuit's holding in *Bundy*, and rather than "discounting" that holding, distinguished the facts of *Bundy* from the facts of the case before it:

"*Bundy* stands for nothing more than the proposition that an insurer must defend and may become obligated to indemnify an insured under a general liability policy of insurance that covers losses caused by "accidents" where the insured's faulty work product damages property of others. In the instant case [the insured] seeks what amounts to recovery for damage done to its own work product, and not damage done to the property of someone other than the insured."

*Vector*, *supra* at 377.

The holdings in *Bundy* and *Vector* can be reconciled by focusing on the property damage at issue in each case. In *Vector*, the insured's defective workmanship resulted only in damage to the insured's work product. In *Bundy*, the insured's defective workmanship resulted in damage to the property of others. Taken together, these cases stand for the proposition that when an insured's defective workmanship results in damage to the property of others, an "accident" exists within the meaning of the standard comprehensive liability policy. This construction is supported by the definition of "accident" adopted by the Michigan Supreme Court:

". . . In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected."

*Guerdon Industries, Inc v Fidelity & Casualty Co*, 371 Mich 12, 18-19; 123 NW2d 143 (1963),   quoted in *Vector*, *supra* at 374.

. . . Thus the property owners in *Bundy* whose homes or offices were damaged by water leaking from the insured's defective tubing were damaged by accident. However, when the damage arising out of the insured's defective workmanship is confined to the insured's own work product, the insured is the injured party, and the damage cannot be viewed as accidental within the meaning of the standard liability policy.

The facts of the instant case are not in dispute. The new roof began to leak shortly after Herbert completed the installation and the leaking water caused damage to the

interior of the building, the exterior of the building, and to the personal property of students and school district employees. The School District has filed an action against Herbert in state court which sounds in both negligence and contract and seeks recovery for the cost of replacing the roof and for the damage to the school building and its contents. On these facts, the Court holds that Plaintiff is obligated, under the terms of the insurance policy, to defend Herbert against the negligence claim in the underlying state action and to indemnify Herbert for any damages to the school building or its contents for which Herbert is held liable. Plaintiff is under no duty, however, to indemnify Herbert for the cost of removing the defective roof and/or installing a new roof. [*Id.* at 437-439.]

We agree with the reasoning of the *Calvert* court and hereby adopt its analysis as our own. The later federal decisions *Oscar W Larson Co v United Capitol Ins Co*, 845 F Supp 445 (WD Mich, 1993), aff'd 64 F3d 1010 (CA 6, 1995), and *Underwriters at Interest v SCI Steelcon*, 905 F Supp 441 (WD Mich, 1995), further support our holding that the second amended complaint alleged an "occurrence" as defined by defendant's commercial general liability policy.

III

Next, defendant argues that even if there was an "occurrence," it owed no duty to defend or indemnify because the second amended complaint alleged intentional acts excluded by the policy. The policy issued provides:

This insurance does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

While the second amended complaint alleged "fraud," it also alleged breach of the Consumer Protection Act, as well as claims sounding in negligence, breach of contract, and breach of warranty. In its brief, defendant describes plaintiffs' claims as follows: "this type of claim for breach of contract, defective workmanship, and breach of warranties is clearly not covered by the commercial liability insurance such as that offered through the Farm Bureau policy." By defendant's own characterization, plaintiffs' second amended complaint was not limited to intentional acts. As previously stated, " '[a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy.' " *Western Casualty & Surety Group v Coloma Twp*, 140 Mich App 516, 520-521; 364 NW2d 367 (1985), quoting with approval *Detroit Edison Co v Michigan Mut Ins Co*, 102 Mich App 136, 141-142; 301 NW2d 832 (1980).

Here, the allegations in the second amended complaint were not clearly limited to property damage "expected or intended from the standpoint of the insured." Accordingly, there was a duty to defend. *Id.* Further, in regard to the duty to indemnify, the trial court in the underlying action found negligence, breach of contract, and breach of warranty.

IV

For its third argument, defendant asserts that there was no duty to defend or indemnify by operation of the "business risks" exclusion in the policy. The business risks exclusion provides:

This insurance does not apply to:

\*          \*          \*

k. "Property damage" to "your product" arising out of it or any part of it.

This exclusion clearly is not applicable to the allegations of the underlying case. As previously noted, the damages alleged in plaintiffs' second amended complaint did not pertain solely to the mobile home (the product of the insured) but also included property damages to Tornow's basement, as well as consequential damages.

Again, federal case law not cited by defendant is instructive. In *Underwiters at Interest v SCI Steelcon, supra,* the insurance company relied on a substantially similar business risk exclusion to deny coverage to several aircraft damaged by a leaking roof erected by its insured. In denying the insurance company's argument for the exclusion, the federal court for the western district of Michigan held:

Where a contractor's workmanship is faulty, this faulty workmanship exclusion unambiguously excludes coverage as to damage to the particular part of property with regard to which the workmanship was faulty. But it does not exclude coverage as to damages to property other than the particular part of the property with regard to which the workmanship was faulty.

Accordingly, this exclusion relieves Plaintiffs of liability with regard to the costs of repairing the structure since Steelcon's performance was faulty. *It does not, however, relieve them of liability for amounts* set off against Steelcon's recovery in the state-court mediation related to *property damage to property other than to the structure itself or for Kal-Aero's loss of use of the structure.* [*Id.* at 444 (emphasis added).]

We agree with the federal district court on this issue and apply its reasoning to the present case.

V

The remaining matters raised in defendant's brief are nondispositive issues. We need not address these matters in view of our holding that defendant breached its duty to defend and indemnify plaintiffs in the prior action.

VI

On cross appeal, plaintiffs argue the lower court erred in refusing to order defendant to indemnify plaintiffs for the attorney fees and sanctions assessed against plaintiffs for the filing of a frivolous third-party complaint against the basement contractor, Lee-lanau Redi-Mix.[1] We disagree. Although defendant had a duty to defend the prior case, we will not hold it responsible for unreasonable and frivolous conduct taken by plaintiffs' retained counsel. See, generally, *In re Freshour's Estate*, 174 Mich 114, 120; 140 NW2d 517 (1913) ("an attorney is entitled to compensation for his services, whether those services have been beneficial to his client or not, *so long as the services have been faithfully and intelligently performed*") (emphasis added). See also *Wood v DAIIE*, 413 Mich

---

[1] Although the order references mediation (MCR 2.403) and offer of judgment (MCR 2.405) sanctions, plaintiffs stipulated that "[t]he first order granting motion for attorney fees and costs shall be amended to include an express reference that the motion was also granted, pursuant to MCR 2.114(D) and (E)." Because the award of sanctions runs from the date the defense of the third-party complaint commenced (February 18, 1993), rather than the rejection of mediation or offer of judgment, the full amount of the award is based solely on a violation of MCR 2.114(D).

573, 588; 321 NW2d 653 (1983) ("the controlling criterion is that the attorney fees be "reasonable"), and *Crawley v Shick*, 48 Mich App 728, 737; 211 NW2d 217 (1973).

Second, plaintiffs cross appeal the lower court's denial of plaintiffs' motion for an award of attorney fees incurred in the present action. Again, we disagree. Under the American rule, absent a statute or court rule authorizing the award of attorney fees, each side is responsible for his own attorney fees. *State Farm Mut Automobile Ins Co v Allen*, 50 Mich App 71; 212 NW2d 821 (1973). Plaintiffs did not argue below and have not argued on appeal a meritorious exception to the rule based on statute, court rule, or contract. See, generally, *Burnside v State Farm Fire & Casualty Co*, 208 Mich App 422; 528 NW2d 749 (1995).

Affirmed. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.