POSTEK, INC., Appellant,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Appellee.

No. 03–1699.

United States Court of Appeals,
Sixth Circuit.

July 23, 2004.

Before KENNEDY and GILMAN,
Circuit Judges;  and SHADUR, District
Judge.*

OPINION

SHADUR, District Judge.

Postek, Inc. ("Postek") appeals from the
district court's grant of summary judg-
ment in favor of St. Paul Fire and Marine
Insurance Company ("St.Paul") on Pos-
tek's sole claim for breach of contract.
Postek's Complaint alleged that St. Paul's
errors and omissions policy (the "Policy")
gave rise to a duty to defend Postek in a
third-party action, but that St. Paul failed
to do so.  Based on the uncontroverted
evidence adduced in St. Paul's summary
judgment motion, the district court con-
cluded as a matter of law that St. Paul had
no duty to defend Postek against the third-
party claims because they had been "first
made or brought" before the Policy's cov-
erage date.  We affirm.

Background

Because this is an appeal from a sum-
mary judgment, we (like the district court)
view the facts in the light most favorable
to nonmovant Postek (*Doe v. Porter*, 370

---

* The Honorable Milton I. Shadur, United
States District Judge for the Northern District
of Illinois, sitting by designation.

F.3d 558, 562 (6th Cir.2004)). We turn, then, to the facts underlying the claim at issue in those terms.

At the time relevant to this lawsuit, Postek was in the business of developing and installing computer automation systems (we say "was" because it closed its doors permanently in 2001). In 1997 Postek contracted with Quality Metalcraft, Inc. ("Quality Metalcraft") to provide a complete computer system package that would facilitate the more effective handling of such tasks as billing, sales and inventory control. Although the contract specified the total purchase price ($887,585), it did not set out a specific payment schedule or a specific project completion date. Instead the contract simply stated:

> Payment terms are net 30 days from date of invoice. Invoicing is based on demonstration of milestone completion. The actual schedule of payments will correspond to a defined set of project milestones.

Apparently the parties never agreed to a "defined set of project milestones." But according to an affidavit of Postek's President James DeLange ("DeLange"), the parties agreed in early 1998 to switch to a monthly payment arrangement instead.[1] Postek also sent Quality Metalcraft a letter confirming that new arrangement. Postek then started to send monthly invoices, and Quality Metalcraft paid the invoices without objection—at least for a few months.

In May 1998, however, Quality Metalcraft decided to stop paying those monthly invoices. When a Postek employee called Quality Metalcraft to find out what was going on, Quality Metalcraft's General Manager Daniel Fox ("Fox") told him that it would make no more payments until Postek first completed additional milestones. Quality Metalcraft did make one additional payment in October 1999, but DeLange stated in his affidavit that Quality Metalcraft "never cured its payment default."

In June 2000 Quality Metalcraft sued Postek based on Postek's alleged failure to deliver the computer system it had promised. And several months later, in January 2001, Postek tendered a copy of Quality Metalcraft's Amended Complaint to St. Paul, seeking coverage under the Policy.

All of the timing already recounted here is of critical importance, because the Policy obligated St. Paul to defend Postek only as to certain claims that were "first made or brought" after the Policy's effective date of July 23, 1999. In that respect the Policy expressly stated that a claim would be considered to have been "first made or brought" on "the date that any protected person could reasonably foresee that a claim or suit would be made or brought." And the Policy then fleshed out the concept of foreseeability by itemizing several circumstances that would qualify under that test, including importantly any situation in which a customer "[r]efused to pay all or part of your charges for those products or services."

St. Paul denied Postek coverage as to the defense of the Quality Metalcraft lawsuit for several reasons, including St. Paul's assertion that the Quality Metalcraft claim was "first made or brought" in 1998 when Postek failed to pay Postek's invoices—well before the Policy's July 23,

---

1. Postek argues that Quality Metalcraft never actually agreed to the monthly payment proposal, despite the statement in DeLange's affidavit that it had done so. But as we explain later in this opinion, the testimony upon which Postek purports to rely actually bolsters the conclusion that both Postek and Quality Metalcraft had agreed to a modification of the payment terms. And of course neither the district court nor we need to credit Postek's version of the facts where no record evidence supports it.

1999 effective date. Postek, dissatisfied with St. Paul's stated reasons for denying coverage, filed this action in May 2002. After the district court had both granted St. Paul's motion for summary judgment and then denied Postek's motion for reconsideration, Postek filed a timely appeal.

## Duty To Defend

We review de novo both the district court's grant of summary judgment and its denial of Postek's motion for reconsideration (*Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454–55 (6th Cir. 2003)).[2] Summary judgment is proper under Fed.R.Civ.P. 56(c) if there is no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. And a genuine issue exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If it were necessary to determine whether St. Paul had a duty to defend Postek against Quality Metalcraft's claims, we would have to measure the allegations in its complaint against the yardstick of the Policy's coverage. *Radenbaugh v. Farm Bureau Gen. Ins. Co. of Mich.*, 240 Mich. App. 134, 610 N.W.2d 272, 275–76 (2000) summarizes the generous manner in which Michigan law looks at claims that target the insured for that purpose. But here we need not probe Quality Metalcraft's Complaint against Postek to that end, for the circumstances that antedated Quality Metalcraft's institution of its litigation clearly take the Policy out of play.

Postek cannot dispute that Quality Metalcraft stopped paying Postek's invoices more than a year before Postek obtained coverage from St. Paul. So it is forced to argue that Quality Metalcraft's failure to pay those invoices did not constitute a "refusal to pay" within the meaning of the Policy. On that score Postek contends that Quality Metalcraft's decision to ignore Postek's invoices is legally irrelevant because the contract called for payments based on "project milestones" and because Quality Metalcraft never missed a milestone payment. Postek also urges that a "refusal," as that term is used in the Policy, requires an unconditional assertion by Quality Metalcraft that it would never pay. As Postek would have it, because Quality Metalcraft did not repudiate its payment obligation altogether but simply decided to "defer payment" until additional project milestones were met, Quality Metalcraft did not "refuse" to pay. All of this, Postek says, required St. Paul to have defended Postek in the lawsuit.

Postek makes no effort to explain De-Lange's affidavit (and a pre-Policy confirming letter) to the effect that both parties agreed to switch to a monthly payment schedule and that Quality Metalcraft thereafter repudiated that promise. Instead Postek seeks to rely entirely on the deposition testimony of Quality Metalcraft's General Manager Fox to argue that Quality Metalcraft did not agree to monthly payment terms. But the problem for Postek in that regard is that Fox's testimony actually supports the parties' agreement to modify the payment terms. Thus Fox testified that he had said this to a Postek employee:

> I told him the company agreed to proceed with the monthly payment schedule as long as we began to see milestones being met.

---

2. Generally motions for reconsideration are reviewed under an abuse of discretion standard, but as we have explained both in *Northland* and on prior occasions, we apply the de novo standard where a party seeks reconsideration of an adverse grant of summary judgment.

Later in that same deposition, Fox further explained:

> My conversation with Mr. Lockwood was that we would pay the monthly installments and hope that the milestone dates would still be met and that we would pay on the monthly installment as opposed to the milestone being met.

That evidence, in conjunction with De-Lange's affidavit and the earlier confirming letter, can support only one conclusion: that *both* Postek and Quality Metalcraft agreed to modify the payment terms of the original contract by inserting a monthly payment schedule instead. And it is undisputed that after it had performed for some months under that revised arrangement, Quality Metalcraft decided not to pay any further monthly invoices.

Even if the Quality Metalcraft testimony could somehow be read (or, more accurately, misread) as reflecting a genuine factual issue on that point, Postek's argument would still be doomed. Postek cannot escape its own President's belief that Quality Metalcraft was in default of those monthly payments—and that being so, Postek should reasonably have foreseen the prospect that Quality Metalcraft would bring a claim or suit. Quality Metalcraft decided on its own to quit paying the invoices that Postek was sending each month, and according to the Policy that decision put Postek on notice that it could foreseeably face a claim or suit.

And there is likewise no merit to Postek's alternative argument that the Policy required that a "refusal to pay" by its customer Quality Metalcraft had to be an unconditional repudiation of any payment obligation. In that respect Postek attempts to read words into the Policy that are just not there. Although it might fairly be said that not every "failure to pay" necessarily constitutes a "refusal to pay" (for example, one belated or missed payment along the way would not always con-

note the foreseeability of a claim or suit), the facts of this case go well beyond any such hypothetical. Fox's deposition testimony clearly states that he told Postek that Quality Metalcraft would not be making any more payments until there was progress on the project.

In sum, the only reasonable conclusion that can be drawn from the evidence of record is that Quality Metalcraft did refuse (in the sense used in the Policy) to pay Postek's monthly charges that it had earlier promised to honor. And under the plain provisions of the Policy, that in turn means that Quality Metalcraft's claim was "first made or brought" well before the Policy's July 23, 1999 effective date, so that Quality Metalcraft's later lawsuit did not fall within the Policy's coverage.

### Conclusion

Postek has failed to demonstrate the existence of any genuine issue of material fact that could arguably negate Quality Metalcraft's refusal to pay all or part of Postek's charges. Hence Quality Metalcraft's claim was "made or brought" before the effective date of the Policy, so that St. Paul did not have a duty to defend Postek in Quality Metalcraft's later lawsuit. Because the district court therefore properly granted summary judgment in St. Paul's favor and then denied Postek's motion for reconsideration, we AFFIRM.