NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0570n.06

No. 14-2216

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Aug 13, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| STEEL SUPPLY & ENGINEERING COMPANY, | ) | |
| | ) | |
| Plaintiff- Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| ILLINOIS NATIONAL INSURANCE COMPANY, | ) | |
| | ) | OPINION |
| Defendant -Appellee. | ) | |

BOGGS and MOORE, Circuit Judges; and REEVES, District Judge.[*]

BOGGS, Circuit Judge.   Plaintiff-Appellant Steel Supply and Engineering Company (Steel Supply) sued Defendant-Appellee Illinois National Insurance Company (Illinois National) for breach of contract.  The district court granted summary judgment to Illinois National.  We affirm the district court's grant of summary judgment for the reasons that follow.

**I**

Steel Supply is a Michigan corporation with its principal place of business in Michigan. It is a subsidiary of the Armada Group, Inc., which purchased an insurance policy from Illinois National, an Illinois corporation with its principal place of business in New York and a subsidiary of AIG.  The insurance policy at issue in this case covered certain damages to Armada and its subsidiaries, including Steel Supply, occurring between April 1, 2009, and April 1, 2010. The policy provides that Illinois National "will pay those sums that the insured becomes legally

---

[*] The Honorable Danny C. Reeves, District Judge for the Eastern District of Kentucky, sitting by designation.

1

obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Policy at § (I)(1)(a). The policy then states that Illinois National "will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply." *Ibid.*

The insurance applies to property damage only if, along with the satisfaction of other criteria, the damage is caused by an "occurrence." *Id.* § (I)(1)(b). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* § (V)(13). The policy defines "property damage" as either "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured . . . ." *Id.* § (V)(17). Finally, the insurance applies neither (a) to "'property damage' to . . . [t]hat particular part of real property on which" Steel Supply (itself or through its subcontractors) has operated, "if the 'property damage' arises out of those operations," nor (b) to property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed . . . ." *Id.* § (I)(2).[1]

On or about January 8, 2008, Steel Supply contracted with the Carmel Redevelopment Corporation (CRC), a public commission created by the City of Carmel, Indiana, to fabricate and erect steel for a construction project in Carmel. On or about June 8, 2009, one of the iron workers at the construction site discovered defects in the steel that Steel Supply had erected. Subsequent investigations revealed additional defects in the steel.

On June 6, 2011, Carmel filed a suit on the CRC's behalf in Indiana state court against Steel Supply for breach of contract, among other claims. Carmel's second amended complaint

---

[1] The policy defines "your work" as both "(1) [w]ork or operations performed by you or on your behalf[,] and [also] (2) [m]aterials, parts or equipment furnished in connection with such work or operations," and includes both "(1) [w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work[,'] and [also] (2) [t]he providing of or failure to provide warnings or instructions." Policy at § (V)(22).

2

stated, in relevant part, that a particular and "critical" connection that Steel Supply designed was "inadequate to handle the" "complicated and significant" "forces coming into" it. Carmel claimed that the immediate need to remediate the steel damaged Carmel directly, and that the delay this remediation caused the project damaged Carmel both directly and also through the claims against it by other contractors for damages that the delays caused those contractors. In its prayer for relief, Carmel sought "an amount sufficient to compensate the CRC fully for its damages, including, but not limited to, direct, indirect and consequential damages, engineers', architects', attorneys' and other professionals' fees and for all other proper relief."[2]

Illinois National initially assumed Steel Supply's defense in the Carmel litigation. But, on January 22, 2013, Illinois National denied coverage and advised Steel Supply that it would withdraw its defense of the Carmel litigation 30 days later. On March 4, 2013, Steel Supply requested reconsideration and, on March 21, 2013, Illinois National reaffirmed its position. On or about August 19, 2013, Steel Supply filed a complaint against Illinois National in Michigan state court. On September 20, 2013, Illinois National removed the case to federal court. Steel Supply moved for partial summary judgment and Illinois National moved for summary judgment. On August 18, 2014, the court granted Illinois National's motion and denied Steel Supply's. Steel Supply timely appealed.

## II

"On appeal, this court reviews the district court's grant of summary judgment de novo." *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 798 (6th Cir. 2012). The parties agree that we should apply Michigan law. Michigan law has addressed whether and when, under insurance contracts such as the one here that define "occurrence" as an "accident,"

---

[2] Steel Supply and Carmel settled the underlying case in November 2014 and stipulated to its dismissal with prejudice in January 2015.

faulty workmanship or similar causes (e.g., the provision of defective products) constitutes an "occurance." As a general matter, mere faulty workmanship does not constitute an occurrence. *See, e.g.*, *Hawkeye–Security Ins. Co. v. Vector Constr. Co.*, 460 N.W.2d 329 (Mich. Ct. App. 1990). The insurer party to such a contract need not defend underlying suits for the "mere diminution in value of the insured's product caused by alleged defective workmanship, breach of contract, or breach of warranty." *Liparoto Const., Inc. v. Gen. Shale Brick, Inc.*, 772 N.W.2d 801, 808-09 (Mich. Ct. App. 2009) (quoting *Radenbaugh v. Farm Bureau Gen. Ins. Co. of Michigan,* 610 N.W.2d 272 (Mich. Ct. App. 2000) (holding that such an insurer *was* liable because the underlying complaint against the insured was *not* limited to such claims)). This rule is intuitive: the purpose of such insurance contracts is to protect the insured against the sort of *accidents* that give rise to liability. It is not to insure against malpractice.

Michigan courts have recognized an exception to this general rule: even mere faulty workmanship constitutes an "occurrence" if it harms a third party's property. The exception, like the rule, is intuitive: a person not party to the underlying contract is innocent and, absent indemnity funded by an insurance company, might not recover. This exception, Steel Supply argues, applies here.

Steel Supply's argument depends on two premises. First, Steel Supply argues that photographs show that Steel Supply's faulty workmanship did, in point of fact, damage property that did not belong to either Steel Supply or Carmel, i.e., third-party property. Second, Carmel claims reimbursement for that damage by mentioning fees for various professionals. The second amended complaint's prayer for relief seeks judgment "in an amount sufficient to compensate . . . fully for [Carmel's] damages, including, but not limited to, direct, indirect and consequential damages, engineers', architects', attorneys' and other professionals' fees and for

4

all other proper relief." From these premises, Steel Supply concludes, at least at this stage of the litigation, that Carmel sought recovery for damage to third-party property.

Both premises fail. An occurrence is an *accident* or faulty work that affects a person not party to the underlying transaction. Here, there is no record that a third party sought contribution from Carmel. In fact, the record suggests otherwise. The photographs on which Steel Supply relies to prove damage do not show a causal nexus between damage and Steel Supply's work. Nor did Carmel mention these photographs in the underlying complaint. And the complaint's language does not explicitly claim reimbursement for any specific damage to third-party property.

In conclusion, Steel Supply has failed to demonstrate that the insurance contract at issue required Illinois National to defend against Carmel's suit, as the district court correctly concluded. For these reasons, we AFFIRM the judgment of the district court.