*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WALEED YOUHANNA,

        Plaintiff,

and

MENDELSON ORTHOPEDICS, PC and
OMEGA REHAB SERVICES, LLC,

        Intervening Plaintiffs,

v

AUTO CLUB INSURANCE ASSOCIATION,

        Defendant,

and

HUDSON INSURANCE COMPANY,

        Defendant-Appellant,

and

AMERISURE INSURANCE COMPANY,

        Defendant-Appellee.

UNPUBLISHED
April 30, 2019

No. 342436
Wayne Circuit Court
LC No. 16-000282-NF

SILVER PINE IMAGING, LLC,

        Plaintiff,

v

AUTO CLUB INSURANCE ASSOCIATION,

No. 342736
Wayne Circuit Court
LC No. 16-004895-NF

-1-

Defendant,

and

HUDSON INSURANCE COMPANY,

Defendant-Appellant,

and

AMERISURE INSURANCE COMPANY,

Defendant-Appellee.

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, defendant Hudson Insurance Company (Hudson) appeals as of right the trial court's stipulated order of dismissal, challenging a previous order granting defendant Amerisure Insurance Company's (Amerisure) motion for summary disposition. We affirm.

## I. FACTS

This is an action to determine the priority of insurers under Michigan's no-fault act, MCL 500.3101 *et seq*. The underlying facts are essentially undisputed. In 2015, plaintiff Waleed Youhanna purchased a commercial tractor-trailer and registered the truck in his name and the name of his business, Wally Transportation, Inc. (Wally). Wally purchased from Hudson a policy of no-fault insurance known as a "bobtail" policy. "Bobtailing" is trucking vernacular for driving a tractor without an attached trailer. *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014). The purpose of a "bobtail" policy generally is to provide insurance coverage when the tractor is being operated without a trailer. *Id*. at 376.

On September 1, 2015, Wally leased the tractor-trailer to Safe Transport, LLC (Safe Transport), and thereafter plaintiff drove the tractor-trailer to deliver loads for Safe Transport. Safe Transport had purchased a policy of no-fault insurance issued by Amerisure. The Amerisure policy listed four tractor-trailers as "covered autos" under the policy, but did not include the tractor-trailer leased to Safe Transport by Wally. On September 14, 2015, plaintiff agreed to transport a load in the tractor-trailer for Safe Transport from Livonia to Louisiana. Early the next morning, while driving the tractor-trailer through Tennessee, plaintiff was injured in an accident that occurred when another tractor-trailer hit the back of his vehicle.

Plaintiff initiated this action against defendant Auto Club Insurance Association (Auto Club), from whom plaintiff had purchased a policy of no-fault insurance covering his personal

vehicle, seeking payment of personal protection insurance (PIP) benefits for his injuries arising from the collision. Plaintiff's medical providers, intervening-plaintiffs Mendelson Orthopedics, PC and Omega Rehab Services, LLC, intervened in the action before the trial court. Plaintiff thereafter amended his complaint, adding Hudson, and later adding Amerisure, as defendants. Meanwhile, another medical provider, plaintiff Silver Pine Imaging, LLC, initiated an action against Auto Club, Hudson, and Amerisure, seeking reimbursement for medical costs incurred in treating plaintiff. The two actions were consolidated before the trial court.

The three insurers moved for summary disposition. Auto Club moved for summary disposition under MCR 2.116(C)(10), arguing that it was not first in priority because it insured plaintiff regarding plaintiff's personal automobile only. Amerisure moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that is was not obligated to pay PIP benefits to plaintiff because the vehicle in question was not covered under its policy with Safe Transport. Hudson also moved for summary disposition, contending that under MCL 500.3114(3), plaintiff, as an employee of Safe Transport, was entitled to PIP benefits from Amerisure as the insurer of the furnished vehicle. The trial court granted summary disposition to Auto Club and Amerisure.[1] The trial court thereafter denied Hudson's motion for reconsideration of its order granting Amerisure summary disposition. Hudson now appeals to this Court.

## II. DISCUSSION

Hudson contends that the trial court erred in granting Amerisure[2] summary disposition. Hudson argues that the trial court incorrectly determined that plaintiff's tractor-trailer was not covered by the Amerisure policy at the time of plaintiff's accident, and that Amerisure therefore was not liable for payment of plaintiff's PIP benefits. We disagree.

### A. STANDARDS OF REVIEW

We review de novo the trial court's decision to grant or deny summary disposition. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). A motion for summary disposition pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint; we accept all well-pleaded factual allegations as true and construe them in a light

---

[1] At the hearing on the motions, the trial court stated on the record that it was denying Hudson's motion for summary disposition, but our review of the record has not revealed an order to this effect.

[2] We reject Amerisure's suggestion that this Court lacks jurisdiction to hear these appeals because Hudson did not file a cross-claim against it in the trial court and is therefore not an "aggrieved party" under MCR 7.203(A). See *Tevis v Amex Assurance Co*, 283 Mich App 76, 79-80; 770 NW2d 16 (2009), in which this Court held that, in a priority dispute between two defendant insurers, the insurer held liable by the trial court to pay PIP benefits had suffered a particularized injury that affected its pecuniary interest, and it therefore was an aggrieved party under MCR 7.203(A) with respect to that ruling.

most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). A motion for summary disposition under this section is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*. at 120. When reviewing an order granting summary disposition under MCR 2.116(C)(10), we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. Summary disposition pursuant to MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*.

The question of the priority of insurers under the no-fault act is one of statutory interpretation that we review de novo. See *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 296; 876 NW2d 853 (2015). The construction and interpretation of an insurance policy is a question of law that we also review de novo. *Hunt*, 496 Mich at 372.

## B. PRIORITY UNDER THE NO-FAULT ACT

The purpose of the Michigan no-fault act, MCL 500.3101 *et seq*., is to ensure compensation of persons injured in motor vehicle accidents. *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 552; 909 NW2d 495 (2017). The sections of the act governing priority, MCL 500.3114 and MCL 500.3115, determine the party against whom a person injured in a motor vehicle accident may claim benefits. *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 215; 895 NW2d 490 (2017). To determine the priority of insurers liable for PIP benefits under the no-fault act in this case, we look to MCL 500.3114, which provides, in relevant part:

> (1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) [MCL 500.3101(1)] applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . .
>
> * * *
>
> (3) An employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

MCL 500.3101(2)(k)(*i*), as in effect at the time of plaintiff's injuries, defined an "owner" of a vehicle to include "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." Because plaintiff was an

employee[3] injured while an occupant of a motor vehicle "owned" by Safe Transport by virtue of its lease with Wally, MCL 500.3114(3) applies to dictate that plaintiff "shall receive personal protection insurance benefits to which [he] is entitled from the insurer of the furnished vehicle." *Besic v Citizens Ins Co*, 290 Mich App 19, 32; 800 NW2d 93 (2010), quoting MCL 500.3114(3).

The question, then, is who is the insurer of the furnished vehicle in this case. Hudson argues that because Amerisure issued a policy of no-fault insurance to Safe Transport, Amerisure is the insurer of the vehicle from whom plaintiff is entitled to receive PIP benefits under MCL 500.3114(3) as an employee suffering accidental bodily injury while an occupant of a vehicle owned by Safe Transport. The parties do not dispute, however, that the Amerisure policy issued to Safe Transport explicitly covers just four vehicles, none of which is the vehicle Safe Transport leased from Wally in which Youhanna was injured.

When ascertaining the scope of coverage provided by an insurance policy, traditional principles of contract interpretation apply, and we determine and give effect to the intent of the parties. *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). We read the policy as a whole and construe the language in accordance with the plain and ordinary meaning of the language to avoid technical or strained construction. *Radenbaugh v Farm Bureau Gen Ins Co*, 240 Mich App 134, 138; 610 NW2d 272 (2000). Contractual language is ambiguous if it is reasonably susceptible of more than one interpretation. *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017). If the contract is ambiguous, we construe the policy against the insurer in favor of coverage. *Radenbaugh*, 240 Mich App at 139.

Hudson argues that the "after acquired vehicle" provision of the Amerisure policy provides for coverage in this instance. That section of the Amerisure policy provides, in relevant part:

**B. Owned Autos You Acquire After The Policy Begins**

\* \* \*

2. But, if Symbol 46 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

---

[3] The parties do not dispute that the priority language of MCL 500.3114 extends to a plaintiff who works as a self-employed independent contractor as described in *Besic v Citizens Ins Co,* 290 Mich App 19, 32; 800 NW2d 93 (2010).

Hudson argues that plaintiff's tractor-trailer falls under this provision because Safe Transport insured all the automobiles it owned through Amerisure, Safe Transport acquired ownership of plaintiff's tractor-trailer through a lease with Wally Transportation, and plaintiff's injury occurred within 30 days of Safe Transport acquiring plaintiff's tractor-trailer. The parties do not dispute that Safe Transport never notified Amerisure that it wanted to add plaintiff's tractor-trailer as a covered vehicle under the Amerisure policy. But Hudson contends that the after acquired vehicle provision of the policy provided a 30-day grace period in which plaintiff's tractor-trailer was automatically covered.

Hudson's argument relies on this Court's holding in *Hobby v Farmers Ins Exchange*, 212 Mich App 100; 537 NW2d 229 (1995). There, this Court held that the insurance policy in that case provided automatic insurance coverage for a replacement vehicle during a 30-day "grace period" following the acquisition of the replacement vehicle, despite the insurer not having been notified. The language of the policy in that case stated that coverage was provided for the replacement of the insured's vehicle "which is acquired by you after the effective date of this policy, when it replaces the vehicle described in the Declarations. We must be told about it within 30 days after the date of acquisition." *Id*. at 101. This Court held that the insurer was obligated under the policy to provide PIP benefits, stating:

> This is a classic description of the operation of a grace period during which insurance is continued in force until it expires by the terms of the contract, i.e., thirty-one days after acquisition of a replacement vehicle unless notice has been given. Where notice is not given within the thirty-day contractual period, as in this case, the insurance is canceled on the thirty-first day by the terms of the contract, but that does not void coverage agreed upon by the parties for the first thirty days after acquisition. When an insured is involved in an accident, the rights created under the insurance policy become fixed on the date of the accident, and the parties may not retroactively cancel the coverage. *Id*. at 104.

However, this Court observed that the insurer in *Hobby* "contracted to provide insurance coverage with or without notice for thirty days, so its risk is not in any way increased or altered by this holding," and that the policy language in that case did not "provide that the automatic insurance agreement is void or does not apply if notice is not furnished." *Id*. at 103. In doing so, this Court distinguished the language of the policy in *Hobby* from the language of the policy in *Auto-Owners Ins Co v Winter*, 188 Mich App 230; 469 NW2d 314 (1991). In *Winter*, the defendant was involved in an accident in a newly acquired vehicle. The insurance policy in that case provided for coverage for newly acquired vehicles, but also provided that the policy did not apply "unless the named insured or spouse notifies the Company within 30 days following the acquisition of an additional automobile. . ." *Id*. at 232.

In this case, the Amerisure policy specifies that an automobile that was acquired after the policy went into effect will be covered under that policy "only if" two conditions are met, one condition being that Safe Transport notify Amerisure to add the newly acquired vehicle to the policy. Unlike the situation in *Hobby*, which involved a replacement vehicle, the tractor-trailer

at issue in this case was, like the vehicle involved in *Winter*, an after-acquired vehicle.[4] The policy language in this case is also distinct from the policy language in *Hobby* and comparable to the policy language of *Winter*, with the policy in *Winter* stating that coverage *does not* take effect "unless" notice is given the insurer, and the policy here stating that it *takes effect* "only if" notice is given. The effect of these provisions is the same—coverage will not occur in the absence of notice. We therefore conclude that, as in *Winter*, and unlike *Hobby*, the policy language in this case did not create a grace period that affords coverage despite the failure of Safe Transport to advise Amerisure of its intention to add the vehicle to the existing policy.

We also reject Hudson's argument that the after acquired vehicle provision of the Amerisure policy is ambiguous because it is equally susceptible of meaning either that coverage was automatically extended for the newly acquired vehicle during the 30-day notice period, or that coverage was not provided unless Safe Transport notified Amerisure within 30 days to add the vehicle to the policy. Again, a contractual term is ambiguous only if it is equally susceptible of more than one meaning. *Barton-Spencer*, 500 Mich at 40. Here, the Amerisure policy provides that an automobile that is acquired after the policy becomes effective may be covered under that insurance policy "only if" certain conditions are met. Because we perceive only one meaning of this language, we decline to find it ambiguous.

Affirmed.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola

---

[4] One can readily understand why an insurer would insist upon notice before agreeing to increase its risk by covering an additional, after-acquired, vehicle, though the language of the Amerisure policy at issue here appears to require notice for both replacement and after-acquired additional vehicles.