# STATE OF MICHIGAN

# COURT OF APPEALS

EMPLOYERS MUTUAL CASUALTY
COMPANY,

   Plaintiff/Counter-Defendant-
   Appellee/Cross-Appellant,

v

MID-MICHIGAN SOLAR, LLC,

   Defendant/Counter-Plaintiff,

and

NOVA CONSULTANTS, INC.,

   Defendant/Counter-Plaintiff-
   Appellant/Cross-Appellee.

UNPUBLISHED
April 19, 2016

No. 325082
Oakland Circuit Court
LC No. 2013-138107-CK

EMPLOYERS MUTUAL CASUALTY
COMPANY,

   Plaintiff/Counter-Defendant-
   Appellant,

v

MID-MICHIGAN SOLAR, LLC,

   Defendant/Counter-Plaintiff,

and

NOVA CONSULTANTS, INC.,

   Defendant/Counter-Plaintiff-
   Appellee.

No. 326553
Oakland Circuit Court
LC Nos. 2013-135627-NO;
     2013-138107-CK

-1-

Before: JANSEN, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

In Docket No. 325082, defendant Nova Consultants, Inc. (Nova) appeals as of right an opinion and order granting summary disposition to plaintiff, Employers Mutual Casualty Company (EMC), in this declaratory judgment action concerning insurance coverage for an underlying dispute over the defective installation of solar energy equipment. EMC has filed a cross-appeal in Docket No. 325082 asserting alternative grounds for affirming the grant of summary disposition in its favor. In Docket No. 326553, EMC appeals as of right an order denying EMC's motion for sanctions for Nova's alleged failure to admit certain matters. The appeals were consolidated. *Employers Mut Cas Co v Mid Mich Solar, LLC*, unpublished order of the Court of Appeals, entered April 1, 2015 (Docket Nos. 325082, 326553). In Docket No. 325082, we affirm the order granting summary disposition to EMC. In Docket No. 326553, we vacate the order denying EMC's motion for sanctions and remand for further proceedings.

I.  DOCKET NO. 325082

Nova argues that the trial court erred when it granted summary disposition in favor of EMC. We disagree.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Hackel v Macomb Co Comm*, 298 Mich App 311, 315; 826 NW2d 753 (2012). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "[T]he proper construction and application of an insurance policy presents a question of law that is reviewed de novo." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 376-377; 836 NW2d 257 (2013). "An insurance policy is subject to the same contract interpretation principles applicable to any other species of contract." *Id*. at 377. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

The general liability insurance policy issued by EMC provides coverage for sums that EMC's insured, Mid-Michigan Solar, LLC (MMS), becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence." The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined in the policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use

-2-

of tangible property that is not physically injured." The policy does not define the term "accident."

This Court has addressed the circumstances under which an insured's defective workmanship may constitute an "occurrence" that is covered by a general liability insurance policy. In *Hawkeye-Security Ins Co v Vector Constr Co*, 185 Mich App 369, 371; 460 NW2d 329 (1990), the defendant, Vector Construction Company (Vector), was contracted to perform concrete work at a wastewater treatment plant. Vector contracted with Boichot Concrete Company (Boichot) to provide the concrete meeting certain project specifications. *Id*. Boichot delivered the concrete to Vector, and Vector used the concrete to construct the roof of a building at the plant. *Id*. After the concrete was poured, testing revealed that the concrete failed to satisfy the project specifications. *Id*. After the owner of the plant demanded corrective measures, Vector removed and repoured 13,000 yards of concrete. *Id*. at 371-372. Vector then sued Boichot for breach of contract, breach of warranties, and negligence, and the general contractor for the project, Barton-Malow Company (Barton-Malow), sued Vector for breach of contract and sued Boichot for negligence, breach of warranties, and breach of contract. *Id*. at 372. Vector's insurer, Hawkeye-Security Insurance Company (Hawkeye), denied coverage and filed a declaratory judgment action on the coverage issue. *Id*. Like the policy at issue in this case, the policy in *Hawkeye* provided coverage for sums that Vector became "legally obligated to pay as damages arising from bodily injury or property damage 'caused by an occurrence.' " *Id*. at 373.

The policy in *Hawkeye* defined "occurrence" in somewhat more detail but in generally the same manner as the policy here. *Hawkeye*, 185 Mich App at 373. Although the policy in *Hawkeye*, like the policy here, did not define the term "accident," this Court noted that our caselaw has defined that term as used in an insurance policy's definition of "occurrence" in the following manner:

> An accident, within the meaning of policies of accident insurance, may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby—that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected. [*Id*. at 374 (quotation marks and citations omitted).]

This Court in *Hawkeye* observed that it was an issue of first impression in Michigan whether an insured's allegedly defective workmanship constituted an accident and an occurrence within the meaning of a commercial general liability insurance contract. *Hawkeye*, 185 Mich App at 374. This Court rejected Vector's reliance on *Bundy Tubing Co v Royal Indemnity Co*, 298 F2d 151 (CA 6, 1962). See *Hawkeye*, 185 Mich App at 375-377. In *Bundy*, the insured, Bundy Tubing Company (Bundy), manufactured tubing that building contractors and plumbers installed in concrete floors for use in radiant heating systems. *Bundy*, 298 F2d at 151. "Some of the tubing manufactured by Bundy contained defects that caused the tubing to fail and leak. Several parties then sued Bundy to recover damages to property sustained by reason of the defective tubing." *Hawkeye*, 185 Mich App at 375, citing *Bundy*, 298 F2d at 151-152. The federal appellate court in *Bundy* held that the failure of the tubing in the heating system was

unforeseen, unexpected, and unintended, such that the resulting property damage was caused by an accident. *Bundy*, 298 F2d at 153. Bundy's insurer was therefore required to indemnify Bundy for the damage to the property, including the cost of removing defective tubing and installing new tubing. *Id*. at 154. In *Hawkeye*, this Court explained that the holding in *Bundy* was inapplicable:

> We find Vector's reliance on *Bundy* misplaced. *Bundy* stands for nothing more than the proposition that an insurer must defend and may become obligated to indemnify an insured under a general liability policy of insurance that covers losses caused by "accidents" where the insured's faulty work product damages the property of others. In the instant case Vector seeks what amounts to recovery for damages done to its own work product, and not damage done to the property of someone other than the insured. [*Hawkeye*, 185 Mich App at 377.]

This Court therefore held "that the defective workmanship of Vector, standing alone, was not the result of an occurrence within the meaning of the insurance contract. Summary disposition was properly granted on this issue." *Id*. at 378.

In *Radenbaugh v Farm Bureau Gen Ins Co of Mich*, 240 Mich App 134, 136; 610 NW2d 272 (2000), the insureds (referred to collectively as Radenbaugh) sold a mobile home to the Tornows (referred to collectively as Tornow) and provided erroneous schematics and instructions to contractors hired by Tornow for the construction of the home's basement foundation, resulting in damage to the home and its basement. Radenbaugh's liability insurer, Farm Bureau General Insurance Company of Michigan (Farm Bureau), refused to defend or indemnify Radenbaugh in an underlying lawsuit filed by Tornow against Radenbaugh. *Id*. The insurance policy in *Radenbaugh* defined an "occurrence" in the same way as the policy at issue here. *Id*. at 140. This Court rejected Farm Bureau's reliance on *Hawkeye* and concluded "that the underlying complaint alleged damages broader than mere diminution in value of the insured's product caused by alleged defective workmanship, breach of contract, or breach of warranty." *Id*. at 141. Radenbaugh did not merely sell the mobile home but also "provided instructions and schematics to contractors hired by Tornow for the construction of the basement and for the erection of the mobile home on its basement." *Id*. The setting of the mobile home on its foundation in accordance with Radenbaugh's instructions was allegedly so defective that the housing inspector refused to issue a certificate of occupancy. *Id*.

This Court in *Radenbaugh* further reasoned as follows:

> Consistent with *Bundy* and contrary to the facts in [*Hawkeye*], the underlying action alleged more than damage to the insured's own product. In particular, it was alleged that because of [Radenbaugh's] defective instructions to the basement contractor, Leelanau Redi-Mix, the basement of the mobile home was improperly constructed and the mobile home was incorrectly erected. As a result of [Radenbaugh's] faulty instructions, the basement was rendered unusable because "water is seeping into and condensing on basement walls, constituting a threat of rot, causing mildew and mold and other health hazards." [*Id*. at 144-145.]

-4-

This Court in *Radenbaugh* also quoted with approval the following language from *Calvert Ins Co v Herbert Roofing & Insulation Co*, 807 F Supp 435, 438 (ED Mich, 1992):

> "The holdings in *Bundy* and [*Hawkeye*] can be reconciled by focusing on the property damage at issue in each case. In [*Hawkeye*], the insured's defective workmanship resulted only in damage to the insured's work product. In *Bundy*, the insured's defective workmanship resulted in damage to the property of others. Taken together, these cases stand for the proposition that when an insured's defective workmanship results in damage to the property of others, an 'accident' exists within the meaning of the standard comprehensive liability policy. This construction is supported by the definition of 'accident' adopted by the Michigan Supreme Court:
>
> '. . . In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.'
>
> *Guerdon Industries, Inc v Fidelity & Casualty Co*, 371 Mich 12, 18-19; 123 N.W.2d 143 (1963), quoted in [*Hawkeye*], *supra* at 374.
>
> . . . Thus the property owners in *Bundy* whose homes or offices were damaged by water leaking from the insured's defective tubing were damaged by accident. However, when the damage arising out of the insured's defective workmanship is confined to the insured's own work product, the insured is the injured party, and the damage cannot be viewed as accidental within the meaning of the standard liability policy." [*Radenbaugh*, 240 Mich App at 147, quoting *Calvert*, 807 F Supp at 438.]

In *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 28; 772 NW2d 801 (2009), the plaintiff, a general contractor, was "contracted to build a house for Dorothy and Clayton Ainscough." The defendant, General Shale Brick, Inc., manufactured the bricks that the plaintiff used to build the house. *Id*. After the brickwork was completed, the bricks became discolored, and the Ainscoughs filed an administrative complaint against the plaintiff. *Id*. The plaintiff contacted its liability insurer, State Auto, which denied the plaintiff's claim for coverage. *Id*. The plaintiff sued State Auto for breach of contract. *Id*. at 29. State Auto sought summary disposition on numerous grounds, including that the discoloration of the bricks did not constitute an "occurrence" within the meaning of the policy. *Id*. The trial court granted summary disposition to State Auto on the ground that the insurance policy was not a bond to secure proper performance of the plaintiff's work. *Id*. The plaintiff filed an appeal. *Id*. The insurance policy in *Liparoto* defined an "occurrence" in the same manner as the policy at issue here. *Id*. at 35. After discussing the analyses in *Bundy*, *Hawkeye*, and *Radenbaugh*, this Court in *Liparoto* reasoned as follows:

> In this case, "occurrence" is defined in the same manner as it was defined in *Radenbaugh*. The definition of "occurrence" in *Hawkeye*[] is more detailed, but is not significantly different in substance. This Court in *Radenbaugh* held that damage resulting from negligence or breach of warranty would constitute an

occurrence triggering the policy's liability coverage only if the damage in question extended beyond the insured's work product. Here plaintiff did not allege, and presented no evidence, that there was damage beyond its own work product. Accordingly, the trial court did not err by concluding that plaintiff failed to establish an occurrence within the meaning of the policy. [*Id*. at 38-39.]

In this case, the property damage is confined to the work product of the insured, MMS. Nova contracted with MMS to install two solar photovoltaic systems. Nova alleged that MMS failed to follow detailed plans and specifications for installing the systems. MMS allegedly failed to properly install the support posts or piles and the fill material, causing the solar panel arrays to shift or move from their intended installation locations or orientations, resulting in stress and strain on parts of the system. MMS also purportedly failed to properly install electrical components so that they could pass required inspections. This improper installation endangered the integrity of the system. Nova made efforts to correct the shifting or movement of the system before it failed. Nova claimed that it would incur expenses to repair the electrical components so that they will pass required inspections and that further repairs may be required later. Nova asserted that MMS was negligent in various respects, including: failing to install the photovoltaic systems in a workmanlike manner; failing to install the support posts or piles in such a manner that they would support the photovoltaic systems and not cause shifting or movement that would damage other portions of the system; failing to properly utilize and compile fill material to support the system; and failing to install the electrical components so that they would pass inspections. Nova claimed that as a proximate result of MMS's negligence, Nova sustained damages that include costs to correct the shifting or movement produced by MMS's improper installation, future repair costs, and expenses in remedying the electrical system. It is clear that the damage is confined to the work product itself, i.e., the solar energy system that MMS was contracted to install. There is no allegation or evidence of damage beyond MMS's own work product. Therefore, the alleged property damage did not result from an "occurrence" within the meaning of the insurance policy. See *Liparoto*, 284 Mich App at 38-39; *Radenbaugh*, 240 Mich App at 147.

Because there was no "occurrence" as required to trigger insurance coverage, EMC was not required to indemnify MMS. Further, there was no violation of EMC's duty to defend MMS.

The duty to defend is related to the duty to indemnify in that it arises only with respect to insurance afforded by the policy. If the policy does not apply, there is no duty to defend. However, the scope of the two duties is not identical; the duty to defend is broader than the duty to indemnify. If the allegations of a third party against the policyholder even arguably come within the policy coverage, the insurer must provide a defense. This is true even where the claim may be groundless or frivolous. [*American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 450-451; 550 NW2d 475 (1996) (citations omitted).]

An insurer must provide a defense "if there are any theories of recovery that fall within the policy." *Id*. at 451(citations and quotation marks omitted). The insurer is required to look beyond the pleadings of the underlying action to determine whether coverage is possible. *Id*. at 451-452. As discussed above, the insurance policy does not apply in this case because there was no occurrence. The underlying allegations do not arguably fall within the policy, nor is there any

evidence beyond the pleadings suggesting that coverage is possible. Given that the policy does not apply, EMC had no duty to defend MMS.

EMC preserved its right to contest coverage by filing the present declaratory judgment action before the underlying consent judgment was entered. See *Riverside Ins Co v Kolonich*, 122 Mich App 51, 58-59; 329 NW2d 528 (1982) (where an insurer is doubtful of liability and wishes to retain its rights, it may file a timely declaratory judgment action to determine if it has a duty to defend the insured). A reservation of rights letter is unnecessary if a timely declaratory judgment action has been filed. See *Security Ins Co of Hartford v Daniels*, 70 Mich App 100, 116; 245 NW2d 418 (1976).[1] In light of our resolution of the above issue, we need not address the alternative grounds for affirmance asserted by EMC on cross-appeal.

## II. DOCKET NO. 326553

EMC argues that the trial court abused its discretion when it denied EMC's motion for sanctions on the basis that sanctions were not relevant and on the basis that this Court reverses the trial court "every time" the court grants sanctions. We agree.

A trial court's decision whether to award sanctions against a party for denying a request to admit is reviewed for an abuse of discretion. See *Phinisee v Rogers*, 229 Mich App 547, 561-562; 582 NW2d 852 (1998). "An abuse of discretion occurs when the decision is outside the range of principled outcomes." *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 659-660; 819 NW2d 28 (2011). The interpretation and application of a court rule presents a question of law that is reviewed de novo. *Id*. at 660.

MCR 2.312(A) provides that a party may request that another party admit the truth of a matter relating "to statements or opinions of fact or the application of law to fact." A party answering a request for admission "must specifically deny the matter or state in detail the reasons why the answering party cannot truthfully admit or deny it." MCR 2.312(B)(2). If the answering party objects to the request, the reasons for the objection must be stated. MCR 2.312(B)(4). The party who requested the admission may move to determine whether the answer or objection is sufficient. MCR 2.312(C). MCR 2.313(C) provides for sanctions if the answering party fails to make an admission:

> If a party denies the genuineness of a document, or the truth of a matter as requested under MCR 2.312, and if the party requesting the admission later proves the genuineness of the document or the truth of the matter, the requesting party may move for an order requiring the other party to pay the expenses

---

[1] Nova identifies no legal basis to conclude that EMC's initiation of the declaratory judgment action approximately 4 ½ months after the initiation of the underlying lawsuit, and before the entry of the underlying consent judgment, was untimely. See *Fire Ins Exchange v Fox*, 167 Mich App 710, 714; 423 NW2d 325 (1988) (concluding that where only four months passed between the initiation of the underlying action and the date that the insurer sent its reservation of rights letter, the insurer was not estopped from denying liability).

incurred in making that proof, including attorney fees. The court shall enter the order unless it finds that

> (1) the request was held objectionable pursuant to MCR 2.312,
>
> (2) the admission sought was of no substantial importance,
>
> (3) the party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or
>
> (4) there was other good reason for the failure to admit.

"The purpose of MCR 2.312 has been stated as to limit areas of controversy and save time, energy, and expense which otherwise would be spent in proffering proof of matters properly subject to admission." *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 457; 540 NW2d 696 (1995) (quotation marks and citation omitted). The fact that a matter was ultimately proved at trial does not by itself establish that the refusal to make the requested admission was unreasonable. *Id*. In general, the elements of a claim are not proper subjects of a request to admit. See *id*. at 457-458. Here, two of the four requests to admit essentially sought conclusions regarding the ultimate legal issues in this declaratory judgment action. In particular, EMC's request for admission #21 asked Nova to admit that EMC had no duty to defend or indemnify MMS, and EMC's request for admission #22 asked Nova to admit that EMC was entitled to a declaration that it had no duty to defend or indemnify MMS. Nova objected to these requests as calling for a legal conclusion. We agree that these requests pertained to the elements or ultimate legal issues in this case and thus were not proper subjects of requests for admission. See *Richardson*, 213 Mich App at 457-458.

The other two requests for admission at issue were more fact-specific. In its request for admission #19, EMC asked Nova to "admit that MMS's failure to follow the detailed plans and specifications for the installation of the photovoltaic system caused damage only to the goods, products, or work that MMS was to install or perform pursuant to the July 6, 2012 contract you had with it." In its related request for admission #20, EMC sought an admission "that MMS's failure to follow the detailed plans and specifications for the installation of the photovoltaic systems did not cause damage to any property at the installation site other than MMS's goods, products and/or work." Nova answered both of these requests as follows:

> Nova objects to this request as seeking information which is neither relevant nor likely to lead to admissible evidence, in that Plaintiff received numerous requests to defend Oakland County Case No. 13-135627-NO ("Underlying Case"), but refused to do so. Therefore, it may not look behind the Consent Judgment entered in that Underlying Case because "When an insurer breaches its own policy of insurance by refusing to fulfill its duty to defend the insured, the insurer is bound by any reasonable settlement entered into in good faith between the insured and the third party." *Alyas v Gillard*, 180 Mich App 154, 160; 446 NW2d 610 (1989). Without waiving the foregoing, it is admitted that damage was caused to the system itself. It is denied as untrue that the damage was limited to the system, itself, as there were other damages, including,

-8-

but not limited to, to Nova's reputation, and to the property, itself, due to encumbrances or threatened encumbrances on the property, as well as collapse or waste should the system fail completely. Discovery is ongoing.

The trial court refused to impose sanctions because it did not view the sanctions as "relevant" and because, according to the trial court, this Court reverses the trial court "every time" the court grants sanctions and, in the trial court's view, this Court "doesn't want us to enforce our orders, so the request for sanctions is denied." The trial court's reference to other unspecified cases in which it says this Court has reversed an award of sanctions "every time" has no bearing on whether the court should have imposed sanctions in *this* case. Nor is it proper for the trial court to base its decision whether to grant the sanctions motion in this case on the trial court's generalized speculation about whether this Court "wants" the trial court to enforce its orders. As noted, the trial court has discretion in deciding whether to impose sanctions for denying a request to admit. *Phinisee*, 229 Mich App at 561-562. A trial court's failure to exercise its discretion when properly called on to do so constitutes an abdication and thus an abuse of discretion. *Loutts v Loutts*, 298 Mich App 21, 24; 826 NW2d 152 (2012). The trial court's comments suggest that it failed to exercise its discretion. The court said that it was denying EMC's motion because this Court reverses the trial court's decision "every time" it awards sanctions and because this Court supposedly does not want the trial court to enforce its orders. Therefore, we vacate the trial court's decision and remand the case to the trial court to properly exercise its discretion *in this case* without reference to whether the trial court has been reversed on sanctions issues in *other* unrelated cases.

The trial court also stated that it was denying the sanctions motion because the court did not "think sanctions are relevant in this case." It is not clear what the trial court meant by this comment. As explained, MCR 2.313(C) provides that if a party denies the truth of a matter as requested under MCR 2.312 and the party requesting the admission later proves the truth of the matter, the court shall award sanctions upon request unless the court finds that one of the four exceptions set forth in MCR 2.313(C) is applicable. The requested admissions here pertained to whether property other than MMS's own work product was damaged by MMS's allegedly faulty workmanship. As discussed earlier, the issue of insurance coverage turned on whether there was damage to property other than MMS's own work product, and the trial court ultimately ruled in EMC's favor on this issue when it granted summary disposition to EMC. As explained above, we are affirming the trial court's grant of summary disposition to EMC. Therefore, if the trial court meant to suggest that the subject of requested admissions #19 and #20 were of no substantial importance, thereby satisfying the second exception set forth in MCR 2.313(C), such a conclusion seems, at least without further explanation, to be difficult to reconcile with the trial court's own ruling in EMC's favor on the summary disposition motion. In any event, given the trial court's failure to properly exercise its discretion as explained above, the trial court's order denying EMC's motion for sanctions is vacated and the case is remanded to the trial court to exercise its discretion in ruling on EMC's sanctions motion.

-9-

In Docket No. 325082, we affirm the order granting summary disposition to EMC. In Docket No. 326553, we vacate the order denying EMC's motion for sanctions and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Kelly